WINDSOR,
February,
1838.

## FOOTE & STONE v. RUFUS EMERSON.

F. & E. were co-trustees of the estate of a minor, and it was verbally agreed between them, that, in consideration that F. should be permitted to employ the trust-fund in trade on his own account, for the term of three years, he would pay the interest thereon to the *cestui que trust*, and would also pay, in goods, to E. $150, per year, for three years. E. took, in goods, under such agreement, a part of the first year's payment;—Held, that the goods so taken by E. could not be sued for and recovered by F.

In such case, the contract being to be performed, in part within one year, and in part thereafter, the whole is void by force of the statute of frauds.

The contract was incompatible with the duties of the parties, as trustees, and, on that account, so far as it remained executory,was illegal and void.

The parties to the contract are *in pari delicto*, and payments, made in fulfilment of it, cannot be recovered back.

Such a contract is not usurious.

THIS was an action of book account, in which judgment to account had been rendered in the county court, and auditors appointed, who reported ;—

That the defendant and Luther Foote, one of the plaintiffs were formerly co-trustees of Susan M. Crosman, a minor, and, in that capacity, had the control and management of an estate, belonging to the *cestui que trust*, amounting to $10,000 ; that Foote & Emerson had been partners in trade, and had employed a portion of the trust-fund in their business; that the defendant sold out his interest in the partnership to

the plaintiffs, and, at the time of such sale, it was verbally agreed between the parties, that so much of the trust-fund, as had been employed in the business of Foote & Emerson, should remain in the business of the plaintiffs, and, as a consideration to the defendant for such agreement, the plaintiffs were to pay the interest on the amount to the *cestui que trust*, and were also to pay the defendant one hundred and fifty dollars per year for three years, in goods out of their store, as the defendant might want them ; that the goods, charged in the plaintiffs' account, were received by the defendant under this agreement, amounting to $124,58 ; that the defendant presented before the auditors a claim, for allowance, of $415,00, for the use of the trust-fund, under the said agreement. The auditors allowed the whole of the plaintiffs' account as charged, with the interest thereon, and concluded their report as follows ;—

1. " If from the foregoing facts the court should decide " that the defendant's claim should be wholly disallowed, " then the auditors find there is due and in arrear, from the " defendant to the plaintiffs, the sum of $147,10, including " the interest on the plaintiffs' account.

2. " If the court should decide that so much of the de- " fendant's claim, as is necessary to balance the plaintiffs' ac- " count, should be allowed him, and that the remainder " should be disallowed, then the auditors find there is noth- " ing due and in arrear, from the defendant to the plaintiffs " to balance book accounts between them.

3. " If the court should decide that the defendant's whole " claim be allowed him, then the auditors find there is due " and in arrear from the plaintiffs to the defendant, to bal- " ance book accounts between them, the sum of $283,97, " including the interest on the defendant's account."

The county court rendered judgment on said report, for the defendant to recover his cost. To which judgment the plaintiffs excepted.

*Aikens & Edgerton*, for plaintiffs, insisted that the contract found by the auditors was void ;—

1. Under the statute of frauds, and

2. Under the statute of usury.

*C. Marsh*, for defendant.

Judgment ought to be rendered, on the third position sta-

WINDSOR,
February,
1838.

Foote &
Stone
*v.*
Emerson.

WINDSOR,
February,
1838.
——————————
Foote &
Stone
v.
Emerson.

ted in the report, for the damages in favor of the defendant there reported.

This is considered as being, between the parties, a mere ordinary transaction, in which defendant, for furnishing a part of the capital in trade with Foote & Stone, is to share in the profits to the amount of $150 per annum.

It has no relation to the subject of usury, and it is believed to be common for persons to furnish capital, under an agreement, that such persons shall receive, not for the use of money well secured, but for the risk run as to its ultimate loss, a specified sum more than merely six per cent interest, as a share of the profits. Or in such case, the party, furnishing funds, may share in the profits, be they more or less, and yet his capital furnished be on interest, and this premium or share in the profits may vary according to the proportion between the funds thus furnished and the stock in trade.

It is not perceived that as *between these parties*, the question is not the same as though the defendant had furnished, out of his own funds, a sum equal to one half the trust-fund left in the hands of the plaintiff, by the agreement.

We are aware that when trustees make any profits by the use of the trust-fund, they are liable to the *cestui que trust* for the full amount of such profits.

However this may be, the trustees will be alike liable to the *cestui que trust* for the profits made by the use of the fund, should it be thought proper, ever hereafter, to call them to account. The agreement, therefore, as between them, ought to be carried into effect.

Surely no one can complain of this transaction, except the *cestui que trust*. Nor is it believed that any case can be found, in which the conduct of trustees in the use of the trust-fund, has been impeached, except by the *cestui que trust*. This is intended only of trustees of a fund merely private or individual, as distinguished from a public charity.

But suppose we are altogether in a mistake, in attempting to sustain the position, that the defendant is entitled to recover the sum reported as the third alternative, yet there will be little difficulty in sustaining the ground on which the county court acted, in entering up judgment on the second position reported by the auditors.

1. This is in no sense a case within the statute of usury.

To constitute usury, it is essential that there should be a loan of money or other property, for the use of which more than six per cent is reserved by the contract.

But in this case there was no lending nor any thing of that nature. The moneys, constituting a large part of the fund of which the parties were both trustees, had been used by them in trade as capital, when they were in partnership, at the dissolution of which, the fund was in the hands of Foote the plaintiff. Foote still wished to employ it in trade, in the new firm of Foote & Stone, they paying the interest to the *cestui que trust*. And plaintiffs proposed to defendant, to pay him the sum of $150 per annum, in goods out of their store To this defendant agreed, and afterwards took up the goods in question, in pursuance of the agreement.

The objection is, that they had no right to make such use of the fund, of which they were trustees.

If the proceedings were improper, the parties were *in pari delicto.* And though perhaps the contract cannot be enforced at law, yet when performed in whole or in part, whatever has been paid cannot be recovered back, and the rule of law, *melior est conditio defendentis*, strictly applies.

In another point of view, the plaintiff cannot recover in this action.

The goods were not delivered under any agreement or understanding of the parties, either express or implied, that defendant was to be liable to pay for them. They were delivered on an entirely different consideration, and though it was proper for the plaintiffs to make a minute of them, that they might know when they had paid the $150,yet they never formed a proper ground for a book charge. The plaintiffs never sold, nor did defendant ever purchase them with any such view. The contract, under which they were delivered, might have been illegal, or the consideration might have been inadequate,but neither of these would justify the plaintiffs in charging them on book, or seeking relief, if they can have any, in this form of action.

The opinion of the Court was delivered by

PHELPS, J.—This case turns upon the effect, which we shall give to the contract, by which the plaintiffs undertook to pay to the defendant, in goods out of their store, the sum of one hundred and fifty dollars, annually, for three years,

WINDSOR,
*February,*
1838.

Foote &
Stone
*v.*
Emerson.

WINDSOR,
February,
1838.

Foote &
Stone.
v.
Emerson.

as a consideration for his permitting them to use the trust-fund, which the defendant and one of the plaintiffs held as trustees.

The plaintiffs insist that this contract was void—1st, by virtue of the statute of frauds, and 2dly, as within the statute of usury. They insist further, that, notwithstanding the delivery of the goods in question, upon the terms of the contract, they are now at liberty to repudiate the contract, and recover in this action, as for goods sold.

The particular clause of the statute of frauds, which is supposed to vitiate the contract, is not pointed out. We can, however, conceive that it may come within the purview of that clause of the first section, which has reference to contracts not to be performed within the space of one year from the making thereof, or within the second section, as a contract executory, for the sale of goods, to the value of forty dollars and upwards.

The part of the contract relied upon here is the undertaking to deliver goods, to the amount of $150,00 per annum, during the said three years. So far as the first yearly payment is concerned, it is evident that the contract, if it had not extended further, would not come within the first section, as, by its terms, it was to be performed during the year, and, in order to bring a contract within this clause, it must appear affirmatively that it is not to be performed within the year. But on the other hand, it is equally clear, that the payments for the two following years, which were to be made during those years, were, by the terms of the contract, not to be performed within one year from the making thereof. So far, then, the contract is within the statute. Such being this contract, the question arises, whether it be void *in toto*, or good *pro tanto*. I understand the term performance, as used in the statute, to mean complete performance; and if, by the terms of a contract, it is to be performed, in part, within one year, and in part thereafter, the whole is void by force of the statute, if it be not in writing. See 11 East, 142. *Squier* v. *Whipple*, 1 Vt. R. 69. The reason of this, I take it, is, that with reference to this statute, the contract must stand or fall entire. This case, therefore, falls within the purview of the statute, as, by the terms of the contract, it is not to be performed fully and completely within one year,

but the performance is, in part, deferred, by the letter of the contract, to a later period.

WINDSOR,
February,
1838.

Foote &
Stone
v.
Emerson.

I apprehend that it would not be difficult to shew, that this contract was originally void also, by force of the second section of the statute, as a contract for the sale of goods. The consideration for the plaintiffs' undertaking was forbearance on the part of the defendant, or what is the same thing, permitting the plaintiffs to retain the trust-fund in their hands. In this point of view, the contract was executory, purely, on both sides. The only light, in which this result can be avoided, is to regard the goods as a part of the interest of a loan, in which case the contract becomes obnoxious to another statute, as usurious. Perhaps, however, the subsequent part-performance may cure the defect, and exempt the case from the operation of the second section. Our decision, on this part of the case, rests on the first section of the statute, which is not affected by part-performance.

There is, however, another very satisfactory ground, upon which we deem the contract in question void; at least, so far as it remains executory. A contract, which is, in itself, in violation of the law of the land, will not be enforced. The law will not aid in its own infraction, nor will it sanction and enforce that which it inhibits. *Ex turpi causa non oritur actio* applies to every case of intrinsic illegality.

The contract in question, between Foote and Emerson, who were joint trustees, we consider as incompatible with their duty, as such trustees. In that character, however they may have been appointed, there is a personal confidence reposed, which cannot be bartered for money. Nor can either relieve himself from the trust, except under the sanction of the court of chancery; and, while the trust subsists, it is the duty of each to preserve, not only the fund, but his control over it. This contract is an attempt, on the part of defendant, to sell out his trustee-ship—to relinquish to his co-trustee the control of the fund, for a pecuniary compensation to himself. The fund is already embarked in a business of hazard. Circumstances might require his prompt interference to preserve it, but, by the contract, he disables himself, puts it out of his power to interfere, and this for a consideration which benefits, not the *cestui que trust*, but himself. It is true, the *cestui que trust* may claim the benefit of what-

Winisor,
February,
1838.
——————
Foote &
Stone
v.
Emerson.

ever is received under this contract, but this is upon the ground, that the trustee is not permitted to speculate for his advantage upon the trust fund, and the remedy, which the law affords, would not render the proceedings the less a breach of trust.

In this view of the transaction, as well as in conformity with the statute of frauds, we consider the contract, so far as it remains executory, as illegal and void, and that the defendant is not entitled to recover the balance remaining unpaid of the sum stipulated.

Whether the plaintiffs are entitled to recover for the goods, delivered upon the terms of the contract, remains to be considered.

If we consider the contract as void by force of the statute of frauds, only, it is clear that the parties are bound, so far as the contract is executed; and if the goods were delivered in part-performance, the plaintiffs cannot recover for them, *Philbrook* v. *Belknap*, 5 Vt. R. 383.

If we treat it as void, by reason of its illegality, as involving a breach of trust, and, therefore, forbidden by the policy of the law, it falls within the general rule, that the court will neither enforce it while executory, nor relieve from it when executed. The application of this rule depends upon the question, whether the parties are *in pari delicto*. If so, there can be no relief to either. On this point, I need only say, that the parties, on both sides, appear in equal fault, and we discover nothing which has the least tendency to create a distinction between them.

It is insisted, however, that the transaction is to be regarded as an usurious loan, and that the plaintiffs are entitled to recover for the goods, as for usury paid. If this be the character of the transaction, it must be conceded that the plaintiffs would be intitled to recover back the usury paid, in some form of action. But we cannot consider this a case of usury. To constitute usury, it is essential that there be a loan of money. Here was no loan. These parties were joint trustees. In equity, the money belonged to the *cestui que trust*, and these parties were mere agents or stake-holders. At law, they were invested with the fund as joint tenants, and the plaintiff, Foote, had the same interest in the fund as the defendant. It was as much the plaintiff's money as the defen-

WINDSOR,
February,
1838.

Foote &
Strong
v.
Emerson.

dant's. They had invested it in their mercantile business, and, upon the change in the partnership, the plaintiffs were permitted to retain it, paying the interest to the *cestui que trust*, and giving the defendant a *bonus*, not for the use of his money, but for his acquiescence, in permitting his co-trustee to take the exclusive management of the fund. Although this may be termed, in a loose sense, a loan, yet it is not so decidedly and technically of that character, as to bring the case within the operation of a penal statute.

If, therefore, the delivery of the goods was in payment of the sum of $150,00, secured to the defendant by the contract, the plaintiffs are not, in our opinion, entitled to recover for them.

It is argued, however, in behalf of the plaintiffs, that this is not a payment, strictly speaking, but a delivery of goods upon account; and that the allowance claimed by the defendant was the subject of future accounting ;—that, in fact, no application of these goods has been made, in satisfaction of the defendant's claim ; and, therefore, that we are now to consider them as distinct and independent claims, to be adjudicated upon according to their merits. We do not view the subject in that light. The contract being voidable merely, and the plaintiffs at liberty to perform, and bound if they did so, the delivery of the goods, upon the terms of the contract, is a waiver of the objection to it. If the defendant received the goods, understanding the delivery to be in payment, and knowing that he would be entitled to retain them, although the contract was voidable, he cannot now be considered as having contracted a debt. If delivered under the contract, they were, doubtless, so received, and if he received them as due to him, it will not now answer to say that they were received under a contract, express or implied, to pay for them.

The judgment of the county court, is, therefore, affirmed