PEPPER, administrator &c. *vs.* HAIGHT and others.

20  429
87h  53
20b 429
15ap567

A deed of conveyance, and a bond and mortgage executed by the grantee, to secure the payment of the purchase money, and bearing even date with the deed, form parts of one transaction, and are to be construed together, as one instrument.

It is competent for a defendant to waive a technical legal defense grounded on an illegality in which he himself knowingly participated, and to affirm the contract so far as the parties to it were concerned.

Objections may be urged, on an argument at a general term, which were not raised on the trial, if they are such as could not have been obviated at the trial.

A defense that a mortgage is void, for being given upon an illegal consideration, will be waived by the omission to set it up specifically in the answer, and by admitting the validity of the mortgage in the answer and on the trial.

The sale of a pretended title to land is an illegal consideration. It is both criminal and immoral; and a mortgage given for the purchase money is void.

There is a distinction between contracts which are immoral and criminal and those that are merely void. Where the contract is simply void and not criminal, assistance may be given to a party to recover back his money, while the contract remains executory. Where money has been paid on an illegal contract which has been executed, and both parties are *in pari delicto,* neither of them can recover from the other the money so paid.

A distinction also exists where the action is in affirmance of the contract, and the object is to enforce its performance, and where the action proceeds in disaffirmance of it.

Where both parties are equally guilty, as where they make a contract which is illegal, because contrary to the provisions of a statute, or the general principles of public policy, the rule *potior est conditio defendentis* applies.

The principle is that no court will lend its aid to a man upon an immoral or illegal contract—not for the sake of the defendant, equally in fault with the plaintiff, and in whose mouth it does not lie to say the contract is immoral or illegal—but because the court will not lend its aid to such a plaintiff.

Where a mortgage contains a clause showing that a part of its consideration is the sale of certain premises in the possession of a third person and held ad-

versely by him, under a claim of title, the contract is directly in conflict with the statute prohibiting the sale of pretended titles, (2 *R. S.* 691, § 6.) And both parties are guilty of a misdemeanor, and the contract is entirely void.

Where the condition of a mortgage, given for the purchase money, stated that the title to a portion of the morgaged premises was in dispute, the land being claimed by a third person, and that the mortgagee had agreed to give a good title to such disputed part, and stipulated that if he failed to do so, before or at the time the first payment became due on the mortgage, the mortgagor should have the right to keep back from the mortgage moneys whatever sums he should have to pay to obtain a good title and possession of the disputed part of the premises; *Held* that the covenant to give a good title was not a condition precedent to the payment of the mortgage.

When mutual covenants go to the whole consideration on both sides, they are mutual conditions, the one precedent to the other; but when the covenants go to only a part of the consideration, then a remedy lies on the covenant, to recover damages for a breach of it, but it is not a condition precedent.

THIS was an action brought by the plaintiff as administrator of —— Phillips, deceased, to foreclose a mortgage. The defendants Haight and wife alone defended. They set up that the mortgage was subject to a condition, which was recited in it, and in the answer. The condition, among other things, stated that Haight had, on the day of the date of the mortgage, purchased of Phillips the premises described in it, being 101½ acres of land. That from three to five acres of the land were in the possession of one Philip Ellsworth, and was claimed as the property of said Philip or the heirs of John C. Smith. That Phillips, when he bargained and sold, promised that he would give a good title to the disputed part of the premises to Haight, and would give quiet and peaceable possession of the disputed premises free and clear of any expense. And it was agreed that if Phillips failed to give Haight a good and sufficient warranty title of the disputed part of the premises, and quiet and peaceable possession, before or at the time the first payment became due on the mortgage, Haight should have the right to keep back from the moneys due or to become due on the mortgage whatever sum or sums of money he should have to pay to obtain a good and *sufficient warranty title and possession* of the disputed part of the premises, with all costs and expenses. That Phillips or his heirs had not performed

the conditions mentioned in the mortgage, and had not *made, executed and delivered* to Haight a good and *sufficient warranty title deed, nor any deed,* which conveyed to Haight a good and sufficient title in fee simple to said disputed lands, and had never put Haight into quiet and peaceable possession of them. That Haight had performed all the conditions on his part, and on the first of April, 1837, paid on the mortgage the sum of $280, and in April, 1839, the further sum of $140. That the dwelling houses, barns, out buildings, garden, well, &c., were all situated on the disputed land claimed by Ellsworth, and that in 1848 Ellsworth commenced an action in the supreme court against Haight to recover possesion of the last described lands and premises ; and that in January Haight was compelled to deliver up possession or pay Ellsworth $500, and $20 costs of suit ; for one acre of said disputed land on which said buildings were situated. That except this one acre the whole of said disputed land had always remained in the possession of Ellsworth, who had refused to sell or deliver possession of the same. That Haight had expended a large sum of money in endeavoring to get title, amounting to $100.

The reply denied the facts set up in the answer, and averred that Ellsworth always remained in possession of the disputed part of the premises ever since the giving of the mortgage. That if Ellsworth ever commenced any suit against Haight it was not commenced in good faith but in collusion with Haight. The action was referred to John M. Carroll, Esq. to take the testimony and report to the court. The referee reported the testimony accompanied by a map showing the location of the premises. The greater part of them, including the house and barn and well, were situated southwest of a road marked on the map " *a a,*" and passing by the house. Phillips built this house and barn, while he occupied, and was in possession of all that part of the farm, until he sold to Haight, who succeeded him in possession. Phillips was in possession twenty years ago. The land on the north side of the road called the three or five acres had been a common for 20 or 25 years until Ellsworth bought the adjoining lot north of that piece, in 1834. In about two

years after, Ellsworth enclosed the piece north of the road with his farm. It was marked on the map b, and called the three cornered piece. The defendants produced a deed from Hiram Dye to Ellsworth, dated 12 April, 1834, covering the 51½ acres, which the defendants claimed was the disputed land, including the house, garden, barn and well south of road a a. Ellsworth after that deed, commenced an action in the supreme court, as he testified, against Haight, in good faith, to recover possession of the buildings and land south of the road a a, (about one acre,) and afterwards sold the land to Haight for $500, being about its value, as he said. The evidence of the commencement of the suit, by parol, was objected to by the plaintiffs, as not the best evidence, and it was received subject to the objection. It appeared that the witness Ellsworth was the father-in-law of Haight. That he, (Ellsworth,) knew that Phillips lived on the land described in the mortgage, 25 or 30 years ago; that he recollected when Phillips built the house and barn now occupied by Haight, and dug the well south of the road a a; and built a fence in front along the road a a. That Haight went into possession of the same premises up to the road a a, and he and Byford had occupied them ever since. After Phillips came to the premises, Ellsworth occupied up to the road a. a. on the south, and Phillips up to the road on the north. It was proved that this road a a had been the dividing line between the premises in the possession of Phillips and those occupying on the other side, for 30 or 40 years, and had never been altered. Other testimony was taken, such of which as is material is alluded to in the opinion of the court. The plaintiffs, after the death of their testator, demanded on the premises, the amount due on the bond and mortgage, offering to deduct out of what was due the value of the piece of land in possession of Ellsworth from the time of the date of the mortgage; which offer was refused. The judge at the trial, directed the referee to report the value of this piece of land, and ordered that sum to be deducted from the mortgage at its date, and judgment in favor of the plaintiffs for the balance, with interest, after allowing all payments. The referee reported the value at $65, which

he deducted accordingly, from the amount of the mortgage ($1780,) at its date, on the first of Nov. 1836, and reported the balance due, after allowing payments to the amount of about $340, to be $966.54 for which judgment was entered in favor of the plaintiffs and a sale of the premises ordered. From this judgment the defendants Haight and wife appealed.

*Dodge & Campbell,* for the plaintiffs.

*Wm. Wait,* for the defendants, Haight and wife.

*By the Court,* C. L. ALLEN, J.   The learned justice who tried the action, passed upon all the questions of fact, and as I understand from reading the case, found that the piece of land designated in the mortgage as the disputed part of the premises, consisting of from three to five acres of land, was that part in possession of Philip Ellsworth at the time of the execution of the mortgage, and lying north of the road *a a.*   I do not see how he could well come to any other conclusion.   The words in the condition itself, recited in the mortgage, are that "*from 3 to 5 acres of said land is in the possession of one Philip Ellsworth,* and is claimed as the property of said Philip Ellsworth or the heirs of John C. Smith."   Ellsworth himself swears, and it was also proved by other testimony, that Phillips built the house and barn south of the road *a a,* and was in possession of them until and when he conveyed to Haight, in 1836, who took immediate possession thereafter and had always been in possession ; and that Ellsworth never was in possession of any part south of the road *a a,* but only of the three cornered piece marked *b,* north of that road, which had been the dividing line between the Phillips farm and the part north of it for more than 30 years.   There can be little doubt, therefore, but that the disputed land referred to in the mortgage was north of the road *a a,* and did not include the house and other buildings occupied by, and in possession of Phillips at the time of its date.   The mortgage covers two certain pieces or parcels of land, particularly described in it ; one containing 49 acres and being part of lot No. 244, in the eastern allotment

of Kingsborough, in Mayfield, and the other being part of lot
No. 242, in the same allotment, containing 52½ acres. It was
to secure the payment of the sum of $780, payable in install-
ments, payment of which was to be made on the premises; and
payments had been made, at different times, of $280. It is
conceded that it was given to secure a part of the purchase
money of the premises. But no deed from Phillips was exhib-
ited in evidence, and the defendants chose to rely upon the
agreement, contained in the mortgage. It nowhere appears dis-
tinctly, what the deed covered. From the recital in the mort-
gage it would appear somewhat doubtful whether it included
the 5½ acres disputed land or not, for it is there stated that
Phillips had promised " when he bargained and sold the prem-
ises, that he *would give a good title* of the said disputed part,
and would give quiet and peaceable possession of the said
premises, free and clear of all expense;" and if Phillips, his heirs
and assigns should neglect and fail to *give Haight* a good and
sufficient *warranty title* of the disputed premises, and quiet
and peaceable possession, Haight was to be at liberty to hold
back so much of the mortgage money as he should be compelled
to pay to obtain and acquire such good title. The probability,
however, is that the disputed part was conveyed, as it was in-
cluded in the mortgage. But it was probably by a quitclaim, as
no warranty deed is shown to have been given, and the breach
alleged in the answer is, that Phillips, his heirs and assigns
have *not made*, executed and delivered to Haight, his heirs and
assigns, a good and sufficient warranty title deed, nor any deed
which conveys to Haight a good and sufficient title in fee simple
to said disputed land mentioned. The mortgage is all we have
to rely upon for evidence, as before remarked; and that does
not show that there was a warranty of title at the time of its
execution; on the contrary, if it proves any thing it shows that
Phillips covenanted and agreed to procure and give such *deed
thereafter.* The statute, (1 *R. S.* 738, § 140,) expressly de-
clares, that no covenant shall be implied in any conveyance of
real estate, whether such conveyance contain special covenants
or not. (11 *Paige*, 566.)

It is contended on the part of the defendants that the bond and mortgage in this case are void, and that no action can be sustained upon them. It is probable, as before remarked, indeed it is conceded, that the bond and mortgage were executed to secure a part of the purchase money of the premises described in the mortgage and which had been conveyed by deed of Phillips, bearing even date with the mortgage. All these instruments therefore form parts of one transaction, and are to be construed together as one instrument. (*Cornell* v. *Todd,* 2 *Denio,* 130. 1 *Comst.* 186. 10 *Wend.* 218, *and various other cases.*)

The objection taken to this defense is, 1. That the defendants have not set up or pretended to any such defense in their answer, but on the contrary that the mortgage is, by the answer, admitted to be good and binding, and that the defendants claim to have made payments upon it, and ask other relief under it, and nowhere claim it to be void. 2. That they raised no such point on the trial before the justice, and are therefore not at liberty to present it here ; and 3. That the mortgage is perfectly valid as between *Phillips* and Haight, and all others, except the *person in possession* of the land holding under the adverse title.

It is true, that the defendants in their answer do not pretend or claim that the mortgage is void, but rather confirm its validity, and claim relief under it. This however may be said to be such relief as the court may consider them entitled to, provided it be held that the mortgage is good. The question is, were the defendants bound to set up or aver in their answer that the contract was void, in order to enable them to avail themselves of such a defense? As between themselves, parties may waive the defense which the law authorizes them to make ; and before the code they could be permitted to take the objection or make the defense without special plea, under the general issue. Such was the case, for instance, as to the defense of usury. But since the adoption of the code, there is no longer, strictly speaking, any such plea as the general issue ; and there can be no answer, therefore, in that form. One object of the code, it has been remarked, was to compel parties to disclose

to each other the facts upon which they respectively relied to uphold the claim on one side and to maintain the defense on the other. (*Report of Com'rs*, 141.) And in *Fay* v. *Wilson*, (10 *Barb.* 321,) it was held that the defense of usury, if the defendant intended to rely upon it, must be distinctly set out in the answer. (6 *How.* 302.) And on a sealed instrument the statute makes it necessary that the want of legality of consideration should be set out in the answer, if the defendant intends to rely upon it as a defense. (2 *R. S.* 3*d ed.* 504, §§ 96, 97.) The answer here not only does not claim that the mortgage is void, but admits its validity and insists that the defendants have performed all the conditions required in it, on their part, and have paid several sums of money upon it. That they have been compelled to pay $500 to procure title to part of the disputed lands, and other expenses, which they claim to have deducted from its amount. Now if it be conceded that it was not necessary specifically to set up this defense in the answer, (which I am not prepared to concede,) still it was competent for the defendants to waive a technical legal defense grounded on an illegality in which they themselves knowingly participated, and to affirm the contract so far as the parties to it were concerned. It is true the law will always leave them where it finds them, and not assist either, where the rights of third persons do not require an interference. But they may carry out their own agreements, subject to all liability which they incur, criminally or otherwise, if they do not call upon the courts to aid them. And I do not perceive why, as against each other, they may not waive any defense grounded upon their own turpitude in part, as it has repeatedly been held they may waive the defense of usury.

Again ; the defendants not only omitted to set up this defense in their answer but they did not claim or interpose it upon the trial of the cause. This is another evidence of *waiver.* The exception, it is true, to the decision of the court, embraces this objection ; but it does not appear to have been presented on the trial, or passed upon by the judge. That, perhaps, was not necessary, to prevent its being present-

ed here, if the answer was sufficient. Objections may be urged on the argument at general term which were not raised on the trial, if they are such as could not have been obviated at the trial. (5 *Wend.* 301. 20 *id.* 210. 16 *id.* 522.) If the mortgage was *void*, then the objection could not have been answered at the circuit, any more than it could have been here. But some additional evidence might have been given, going to show that the case was not strictly within the statute. I am inclined to the opinion that the defense was waived, by not specifically setting it up, and admitting the validity of the mortgage in the answer, and on the trial. Suppose, however, that the objection may be taken here, is it fatal to this objection?

There is no doubt but that the consideration of the bond and mortgage was the conveyance of the mortgaged premises. This was an entire consideration, and if it was in part illegal, is not the whole contract void? (*Chit. on Cont.* 425. *Burt* v. *Place*, 6 *Cowen*, 431. *Mackie* v. *Cairns*, 5 *id.* 548, 580. *Hyslop* v. *Clark*, 14 *John.* 458. 13 *Wend.* 53. 20 *id.* 390. *Nellis* v. *Clark*, 4 *Hill*, 424.) We have recently so held in the case of *Barton* v. *The Port Jackson and Union Falls Plank Road Co.*, (17 *Barb.* 397.) In *Woodworth* v. *Janes*, (2 *John. Cas.* 417,) this principle was applied to a sale of land, and it was held, in the court of errors, where A. executed to B. a quitclaim deed for land, claimed by the state of Pennsylvania, and received the notes of B. in payment, on a bill filed to obtain an injunction to stay the collection of the notes, that the sale was maintenance in selling a *pretended title*, and that both parties being *in pari delicto*, a *court of equity* would not relieve either, but leave them to pursue their remedies at law, and the bill was dismissed. In *Whittaker* v. *Cone*, same volume, p. 58, the supreme court decided that where notes were given for the purchase money on a contract for the sale and purchase of Susquehanna lands, within the jurisdiction of Pennsylvania under the Connecticut claim to those lands, the sale was illegal and the consideration void.

The 6th section of the statute (2 *R. S.* 691) declares it to be a misdemeanor for any person to buy or sell, or in any manner procure or *make or take* any promise or covenant to convey any

pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise, shall have been in possession of the same, or of the reversion or remainder, or have taken the rents and profits thereof for one whole year before such *grant, conveyance or promise.* The sale of a pretended title to land is therefore an illegal consideration; it is both criminal and immoral. There is a distinction undoubtedly between contracts which are immoral and criminal and those that are merely void. Where the contract is simply void and not criminal, assistance may be given to a party to recover back his money, where the contract remains executory. Where money has been paid on an illegal contract which has been executed, and both parties are *in pari delicto,* neither of them can recover from the other the money so paid. A distinction exists where the action is in affirmance of the contract and the object is to enforce its performance, and where the action proceeds in disaffirmance of it. (4 *Barb,* 524, 527, *and cases there cited.*) Where both parties are equally guilty, as where they make a contract which is illegal, because against the provisions of a statute, or the general principles of public policy, the rule " *potior est conditio defendentis* " applies. (4 *Hill,* 624. 20 *Wend.* 26. 20 *John.* 386.)

The principle is that no court will lend its aid to a man upon an immoral or illegal contract, not for the sake of the defendant, equally in fault with the plaintiff, and in whose mouth it illy lies to say the contract is immoral or illegal, but because the court will not lend its aid to such a plaintiff. (20 *Wend.* 32.) Whatever the parties have fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute, or pay damages for not executing. It will leave the parties where it finds them. (*See Perkins* v. *Savage,* 15 *Wend.* 412; 7 *Paige,* 616, 653.)

Now test the facts in the case under consideration with those principles and decisions, and to what conclusion must we arrive? The mortgage given in evidence by the plaintiff contains a clause showing that part of its consideration was the sale of certain premises in " the possession of Philip Ellsworth and claimed as

the property of Ellsworth or the heirs of John C. Smith; held adversely, or stated to be the disputed part of the premises" thus sold and conveyed; coming directly in conflict with the provisions of the section of the statute before cited, and making both parties guilty of a misdemeanor, and the act or contract itself entirely void; and being in part only executed, it cannot be farther enforced by either party as against the other. It is said that being under another section of the statute, declaring (1 *R. S.* 739, § 147, [160,] 4*th ed.* 169) that every grant of land shall be absolutely void, if at the time of the delivery thereof such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor, the conveyance and contract was only void as to the person holding adversely, and not as between grantor and grantee. In *Livingston* v. *Proseus,* (2 *Hill,* 526, 528,) it is said to be well settled that as between grantor and grantee and persons standing in legal privity with them, the deed is operative and passes the title; and a great number of cases are there cited in support of the principle. The case of *Van Hoesen* v. *Benham,* (15 *Wend.* 164,) decides that a deed of land held adversely at the time is effectual between the parties to the conveyance; that the deed operates to estop the grantor; that it is a principle running through the books, that a feoffment upon maintenance or champerty is good as between feoffor and feoffee, and is only void against him who hath right.

It has been before remarked that there was no warranty of title and no eviction, and there has been a payment of a part of the purchase money. Under those circumstances the mortgagor cannot be relieved from proceedings on the mortgage. (*Abbott* v. *Allen,* 2 *John. Ch.* 519. *Bumpus* v. *Platner,* 1 *id.* 213.)

I do not however agree with the counsel for the defendants, that the covenant in the mortgage, to give a good title, was a condition precedent to the payment of the mortgage. It was clearly not so intended by the parties. The defendant Haight made payments on the mortgage. By the provision in it Haight was to be entitled to keep back sufficient to indemnify him for any moneys he should be compelled to pay to procure good title

to the disputed part. Where a covenant only goes to part of the consideration on both sides, and a breach of the covenant may be paid for in damages, it is an independent covenant, and an action may be maintained without averring performance. (*Grant* v. *Johnson,* 5 *Barb.* 161.) Where mutual covenants go to the whole consideration on both sides, they are mutual conditions, the one precedent to the other; but when the covenants go to only a part of the consideration, then a remedy lies on the covenant, to recover damages for a breach of it, but it is not a condition precedent.

If the defendants were entitled to have any thing deducted from the amount due on the mortgage, it would only be the value of that part of the premises in possession of Ellsworth. It has been before shown, that Phillips had been in possession of all the premises up to the road *a a,* before the deed to Ellsworth from Dye covering the house, barn and well south of that road. That deed was certainly void if the one from Phillips to the defendants was, and for the same reasons. The contract only recites that part which was in possession of Ellsworth as the disputed land, and cannot be construed to include any other part. The defendants have never been lawfully evicted from any part south of the road *a a.* It is true that Ellsworth, the father-in-law of Haight, testifies that he commenced an action in the supreme court against Haight to recover the one acre on which the buildings were; that there was no legal evidence of any action having been commenced; and Haight never gave any notice to Phillips that such action had been commenced, but proceeded on his own responsibility and risk to pay Ellsworth for his pretended title, without at all consulting Phillips. The evidence, so far from establishing any title in Ellsworth, under the deed from Dye, showed that deed to have been entirely void at the time of its execution, and that Ellsworth would not have been entitled to recover against Haight in the action which he brought against him. Haight therefore settled that action and paid the money in his own wrong. He had no right to judge of the sufficiency of Ellsworth's title. He should have defended the action, or given notice to Phillips or his heirs, to defend. He did neither,

but quietly submitted to the terms imposed by Ellsworth, and the probability is that it was a contrivance between Haight and his father-in-law to have this claim set up by Ellsworth and allowed by Haight for the purpose of swallowing the amount due on the mortgage. I do not say that the judge so found the fact, but I think he would have been warranted in so doing, from all the evidence. Haight went into possession of the mortgaged premises at the time of the execution of the mortgage, and has remained in possession ever since, except as to the part north of the road *a a*, of which he has never been in possession. The value of that part, however, has been deducted from the amount of the mortgage.

On the whole, I am of the opinion that if the contract is to be deemed legal, the action was properly disposed of at the circuit, and that the judgment should be affirmed.

Judgment affirmed.

