Alona *v.* J. Kupau.

## SUPREME COURT—IN BANCO.

## SPECIAL TERM—NOVEMBER, 1881.

*Judd C. J., McCully and Austin, J. J.*

ALONA *vs.* J. KUPAU.

#### ON EXCEPTIONS.

AN ACTION WAS BROUGHT to recover money paid by plaintiff to defendant as rent in advance for land under a written lease. The defendant had, with the knowledge of plaintiff, made a previous agreement to lease the land in question which had been decreed by a Court in Equity to be specifically performed, and the lease between the parties to this case ordered to be canceled;

HELD, as both parties were in *pari delicto*, and the contract executed, the plaintiff cannot recover. In this case the plaintiff seeks to avoid an executed contract in itself fraudulent. This differs from the case where a party seeks to affirm an illegal contract still executory.

Opinion of the Court by AUSTIN, J.

This is an action of assumpsit for money had and received. It was tried before Mr. Justice Judd, the jury being waived, at the July Term, 1881, who decided that the plaintiff could not recover. To this decision the plaintiff duly excepted and brought his exceptions to the Court in Banco.

The facts are substantially as follows: On the 6th day of November, 1881, the plaintiff paid to defendant $350, as rent in advance for five years for a piece of land in Waialua, Oahu. The receipt passed at the time is put in evidence and also a lease from defendant to plaintiff, dated November 1, 1880, and recorded November 6; 1880, for the said land for fifteen years.

There is also in evidence the records of a suit in equity in

this Court, between one Aiau (Ch.) against this same defend-
ant, Kupau, for the specific performance of an agreement in
writing whereby Kupau agreed on the 1st day of November,
1880, in consideration of $50 paid, to execute a lease to the
said Aiau for the land mentioned above for fifteen years.
This agreement is dated October 25, 1880. The plaintiff ·
Alona was a co-respondent in the equity suit, and the bill
alleges that Kupau, conspiring with Alona to defraud Aiau,
fraudulently executed and delivered the lease of the 1st No-
vember to Alona, who knew of the agreement to lease pre-
viously made by Kupau. The bill prayed for an answer from
both respondents; that the recorded lease be decreed to be
void, and ordered to be delivered up for cancellation, and that
Kupau be ordered to execute a lease to plaintiff, Aiau, in con-
formity with the agreement. The case went to a hearing,
and the Court found on the evidence that Alona had actual
notice of the previous conveyance, and that therefore the prior
record of the lease availed him nothing.

The plaintiff seeks in this action to recover back the rent
advanced on the ground that the lease which he took from
defendant has been ordered to be delivered up for cancella-
tion, and a lease to Aiau has been executed. Mr. Justice
Judd in the Court below held that the plaintiff could not re-
cover. From this decision the plaintiff appeals to the Court
in Banco.

### BY THE COURT.

We have examined with great care the decision of the
Court below in this case, and the evidence on which it was
based, and we think the decision must be affirmed. That
Alona and Kupau attempted to defraud Aiau out of his lease,
there can be no doubt. That Kupau knew that he had here-
tofore leased to Aiau is unquestionable; that Alona also knew
it, was found by the Court and is indisputable. Knowing
this fact they combined to give and take the lease, and Alona
paid and Kupau received the $350 sought to be recovered

here, and the lease was at once delivered and recorded. The inevitable object was to try to cut off, legally, the prior agreement to Aiau, and both the parties in this case surely knew that that was the object. This was fraud, and the plaintiff and defendant knew it; they were in *pari delicto*.

"The general rule is, that when an illegal contract has been made, neither a Court of law nor of equity will interpose to grant relief to the parties thereto, if they have been equal partakers and promoters of the illegality, but it will leave them as it finds them, according to the maxim: 'In *pari delicto potior est conditio defendentis et possidentis.*'"

See Story on Contracts, Section 489.

Doubtless, in such cases it has been held, since the early days, that the plaintiff cannot recover, with certain exceptions which will now be considered. See Parsons on Contracts, Vol. 2, p. 253–4.

Pepper *vs.* Haight, 20 Barb., 429–38.

If the fraudulent contract made is still executory, and the fraudulent purpose has not been consummated, any money paid may be recovered back before the fraudulent consummation.

See Morgan *vs.* Groff, 4 Barb., 527–8–9 and cases cited.

That is not this case, for the fraudulent purpose was consummated by the delivery and record of the lease to the plaintiff. It is also held by well considered authorities that a conveyance of either real or personal property in fraud of creditors, although voidable by them, is good between the parties even if the grantee shared in the fraudulent intent.

See Harvey *vs.* Varnum, 98 Mass., 118–20 ; also dissenting opinion of Chief Justice Nelson. Nellis *vs.* Clark, 20 Wend., 38–9–40.

If this be sound law, and we do not now question it, it does not help the plaintiff. An important and radical distinction is made between an action in affirmance of an illegal contract, and where the action proceeds in disaffirmance of such a

contract, and on the ground that it is void, and seeks to pre-
vent the defendant from retaining the benefit which he has
derived from an unlawful act.   To affirm such a contract is
allowed in many cases.   But in this case there can be no sub-
stantial affirmance of the fraudulent contract, for the purchaser,
sought to be defrauded, has been able to show the fraud, and
has appropriated to himself the substantial fruits sought by it.
True, as said in the decision below, under the Mass. case, the
fraudulent lease might be postponed to the lease established,
but the Court now concur in thinking that this postponed
right would be of little value, and that all substantial value is
lost to the plaintiff and, that being the case, the plaintiff seeks
to disaffirm the contract, and to recover what he had paid in
fraud.   Of the failure of the lease the plaintiff took the risk,
as the vendee in a deed executed to defraud creditors, takes
the risk that the creditor may set it aside.   See 20 Wend.,
40.   If set aside, no Court ever held that the vendee could
recover from the vendor the money paid down on the sale.

The action here seeks to avoid an executed contract which
was *malum in se ;* no leading authority can be found to sustain
a recovery in such a case.

See Morgan *vs.* Groff and cases cited, 4 Barb., p. 527.

There is also an undoubted distinction between contracts
which are immoral and criminal, and those that are merely
void.   See Vischer *vs.* Yates, 11 John., 29.   Nellis *vs.* Clark,
30 Wend., 38.

On void contracts recoveries have been allowed.   White *vs.*
Franklin Bank, 22 Pick., 181.   Utica Insurance Company *vs.*
Cadwell, 3 Wend., 296.

This is not a case of a merely void contract.   It is immoral.
None of the distinctions above referred to help the plaintiff in
this case.   We have examined with care all the available
authorities cited by the plaintiff's counsel, and think that all
may be classed under the exceptions, allowing recovery above
referred to.   The cancellation of the lease ordered was of no

moment. The judgment of the Court in the equity suit could not affect the validity of the contract between the parties in this case, and certainly could not give the plaintiff a right to recover here, if, but for that, he would have had no such right. The exceptions are overruled.

A. S. Hartwell for plaintiff.

Honolulu, December 12, 1881.