## James W. Brockway
### v.
### Cook County.

1. RECORDER, DUTIES OF—CERTIFYING TO ABSTRACTS.—The county commissioners of Cook county having purchased a set of abstract books of title to real estate, the county recorder, at the request and by the direction of the county board, took charge of the same, and made out and certified to abstracts of title for persons applying for the same, charging and receiving therefor compensation at rates fixed by a schedule furnished to the recorder by the county board. *Held*, that the services of the recorder in making out and certifying to such abstracts were outside of his duties as recorder, and that he was not compensated therefor by his salary as recorder.

2. SUIT BY COUNTY BOARD FOR MONEYS RETAINED BY RECORDER.—The county brought suit against the recorder for moneys retained by him as compensation for such services out of the receipts derived from the making and certifying to abstracts. *Held*, that it was immaterial whether the county board had or had not authority to engage in the business of making and selling abstracts. If it had authority to do so, and employed the defendant, it had authority to pay him for his services, and the services being rendered, a promise to pay would be implied. If, however, the business of making and selling abstracts was *ultra vires* the corporate powers of the board, the county could maintain no action to recover the avails of such enterprise. In such cases the law leaves the parties in the condition in which they have placed themselves, and will help neither.

3. COUNTY BOARD ENGAGING IN BUSINESS OF ABSTRACT MAKING—EMPLOYMENT OF RECORDER.—If the board had authority to engage in the business of abstract making, no reason is perceived why it might not employ the recorder to transact the business as it might any other person.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed January 6, 1885.

Brockway v. Cook County.

Mr. IRA W. BUELL, for appellant; as to the powers of municipal corporations, cited Green's Brice's Ultra Vires, 2 Am. Ed. 728; City of East St. L. v. East St. L. G. L. & C. Co., 98 Ill. 415; 1 Dillon on Municipal Corporations, 23, 115; Webster v. the People, 98 Ill. 343; Cook Co. v. McCrea, 93 Ill. 236; Chicago Building Society v. Crowell, 65 Ill. 453; Cooley's Constitutional Limitations, 260.

Mr. WILLIAM LAW, JR., for appellee.

WILSON, P. J. This is an action of debt brought by the county of Cook against appellant, James W. Brockway, to recover the sum of five hundred dollars claimed by the county to be due to it from appellant, on the first day of June, 1883, under the facts hereinafter stated. The declaration contains the common counts, also a special count, which sets forth that on December 1, 1882, the defendant was the duly elected recorder of deeds of Cook county, an office created by the constitution of the State of Illinois, which provides that the defendant's only compensation shall be a salary fixed by law, and that all fees, perquisites and emoluments above such salary shall be paid into the county treasury. That defendant's salary was fixed by law at $3,000 per annum, and he was required to pay into the county treasury all fees, perquisites and emoluments of his office, and to make report under oath to the chairman of said board semi-annually of all such fees and emoluments and of all necessary expenses for clerk hire, stationery, etc., for the half year ending at the date of such report. That during the half year ending May 31, 1883, defendant, as such recorder, received as perquisites $500 over and above his salary and necessary expenses for said half year, which he refused to pay into the county treasury, etc.

The defendant pleaded *nil debet*, the plaintiff stipulating that he might introduce any evidence in defense admissible under special pleas properly formed. The case was tried by the court without a jury, resulting in a judgment for the county for $500, from which the defendant appealed to this court.

The only evidence heard upon the trial was introduced by appellee, and consisted of the written report of appellant to the board of county commissioners of Cook county, dated December 3, 1883, and appellant's oral testimony. From this evidence it appears that appellant was duly elected recorder of deeds of Cook county in 1876, and has been acting as such recorder continuously since December 4th of that year, having been elected as his own successor in 1880. That during all his said term of office, acting under the authority and direction of said county board, with the aid of certain assistants employed and paid by appellant, with the approval of said board, out of the proceeds of abstract making, appellant, besides discharging the statutory duties of his office as recorder, has been engaged in revising, classifying and transcribing certain abstract books, purchased by said board in 1875 of Wilmans and Thielke, and in keeping up said books, preparing index books showing the judgments entered in the courts of Cook county, including the federal courts, keeping index books of tax sales, making tract indices, and in making abstracts of title to real estate in Cook county for persons applying therefor, certifying to the same by affixing his signature as recorder together with his official seal, and collecting compensation for making and certifying to said abstracts according to a schedule of rates fixed by said county board, from which business of making and selling abstracts large receipts of money in excess of the expenses of said business have been derived, of which semi-annual reports have been made by appellant to said county board, and the total amount of said receipts, less said expenses and less the sum of one thousand dollars per annum retained by said appellant, with the approval of said board for his services so rendered, has been paid into the county treasury.

The $500 for the recovery of which this suit was brought is a part of the net earnings derived from said business of abstract making during the period commencing December 1, 1882, and ending June 1, 1883, and is retained by said appellant as compensation for his services rendered as aforesaid during that period.

Brockway v. Cook County.

It appears from the evidence that the moneys derived from the abstract business were kept by appellant separate and apart from the money received in the recording department. It should be further stated that the county board had from time to time approved of appellant's semi-annual reports, in which he had deducted from the moneys received for abstracts at the rate of one thousand dollars per annum as his compensation for supervising the abstract business and making abstracts, and that in making out the salary list for the years 1880 and 1881 the board had unanimously adopted the report of the committee on public service fixing the compensation of the recorder, as chief of the abstract department, at $1,000 per annum.

It is claimed on the part of the county that "the county board has no legal authority to allow to the recorder any extra compensation for superintending said abstract department over and above his salary as fixed by law, nor has the recorder a right to demand any extra compensation and to retain the same out of moneys in his hands as recorder."

On the part of appellant it is insisted that the business of making and selling abstracts for profit and gain is not within the corporate powers of the county, and being *ultra vires* and illegal, the county can claim no share of the profits arising therefrom, and can maintain no action in respect thereto. Second, that the business of making abstracts of title and certifying to the same is no part of the duties of the recorder of deeds required by law, nor is he required to keep an index of judgments of the various courts, nor an index to tax sales, and that for the work so performed by him at the request and by direction of the county board, including the labor, care and responsibility involved in making and certifying to abstracts of title, he is entitled to a just and reasonable compensation; that the money sued for, being a part of the net receipts and profits derived from making and certifying by appellant to abstracts of title, is no part of the proper fees, perquisites or emoluments of his office of recorder, which he is bound by law to pay over to appellee, and that said money is rightfully retained by him, and is due to him

individually for compensation for services rendered under an implied, if not an express, contract with appellee.

The office of the recorder of deeds of Cook county was created by the constitution of 1870 (Art. 10, Secs. 8 and 9), which provides that he shall receive as his only compensation for his services a salary to be fixed by law, to be paid out of the fees of the office actually collected; and all fees, perquisites and emoluments above the amount of said salary shall be paid into the county treasury. By Sec. 31, Chap. 53, Rev. Stat., the salary of the recorder of Cook county was fixed at $3,000 per annum, and by the same section he is required to report in writing, under oath, on the first day of June and the first day of December in each year, all fees and emoluments of his office for the half year ending at the date of such report, and all expenses incurred; and it is made the duty of the board to audit his accounts and correct and adjust the same according to the facts.

Under the view we take of the case it is unnecessary to express any opinion as to the authority or legal right of the county board to engage in the business of making and selling abstracts of title. It is not claimed that such authority is conferred in express terms, but that it may be fairly implied from other powers which are expressly granted by the statute. The question with which we shall principally concern ourselves relates to the duties which by law are imposed upon the recorder by virtue of his office, since, if the making and certifying to abstracts is not one of them, it would logically result that for such services he is not paid by the receipt of his salary as recorder.

The act in relation to recorders (Ch. 115, Rev. Stat.) points out specifically the powers, duties and liabilities of that officer, and is applicable alike to recorders elected in counties having a population exceeding sixty thousand, and to clerks of the circuit court, who are made *ex officio* recorders in counties having a population less than sixty thousand. He is required to give a bond conditioned for the faithful discharge of the duties of his office, and to deliver up all papers, books, records and other things appertaining to his office

Brockway v. Cook County.

whole, safe and undefaced when lawfully required to do so. He may appoint deputies, for whose neglect or omission of the duties of his office he is liable in the same manner as for his own personal neglect or omission. By section 9 it is made his duty, as soon as practicable after the filing of any instrument in writing in his office entitled to be recorded, to record the same at length, in the order of time of its reception, in well bound books to be provided for that purpose. By sections 10 and 11 he is required to give a receipt to the person leaving an instrument for record, and to indorse upon such instrument the time when the same was filed for record, and the book and page in which the same is recorded.

Section 12 provides that every recorder shall keep the following books:

First. An entry book, in which he shall, on the receipt of any instrument to be recorded, enter in the order of its reception the names of the parties thereto, its date, the day of the month, hour and year of filing the same, and a brief description of the premises, indorsing upon such instrument a number corresponding with the number of such entry.

Second. A grantor's index, in which shall be entered the name of each grantor in alphabetical order, the name of the grantee, date of the instrument, time of filing, kind of instrument, consideration, the book and page in which it is recorded, and a brief description of the premises.

Third. A grantee's index, with like data as those required by the grantor's index.

Fourth. An index to each book of record, in which shall be entered in alphabetical order the name of each grantor and grantee, and the page in which the instrument is recorded.

The Fifth specification is as follows: " When required by the county board, an abstract book, which shall show by tracts every conveyance or incumbrance recorded, the date of the instrument, time of filing the same, the book and page where the same is recorded, which book shall be so kept as to show a true chain of title to each tract and the incumbrances thereon, as shown by the records in his office."

Sixth. An index to recorded maps, plats and subdivisions, such index to be made by description of land mapped or subdivided, by range, township, section, quarter section, etc.

Section 19 provides that "when abstract books have not been kept in any county up to the time of the taking effect of this act, the county board of such county may, if they deem it expedient, procure such abstract books to be made in the form prescribed in this act at the cost of the county, showing a connected chain of title and incumbrances up to the time of the taking effect of this act." .

The foregoing are all the provisions relating to the duties of the recorder which have any bearing on the question now under consideration. Clearly none of them impose upon the recorder the duty of making out and certifying to abstracts of title, nor are we aware of any law authorizing the county board to impose upon the recorder any additional duties beyond those designated by the statute, certainly none which he could be required to perform without additional compensation. That such was the view entertained by the commissioners themselves is shown by the fact that for several years they allowed and paid him, in addition to his salary as recorder, $1,000 per annum for extra services in the abstract business, including the making out and certifying to abstracts.

The fifth specification, which is the only provision that can be supposed to give any color to the claim of appellee, provides only for the *keeping of an abstract book*, "to be so kept as to show a true chain of title." The duty of making and certifying to abstracts is nowhere mentioned or alluded to, nor can any such duty be fairly implied from any provision of the statute. In the absence of any other provision on that subject, we must presume from the language used that the legislature intended merely to provide for the keeping of a book for the convenient use of the public in examining titles to real estate, and which, like the record of deeds, or judicial records of the different courts, should be open to the inspection and examination of every one.

Such a book, showing in a condensed form matters which could otherwise only be ascertained by a protracted examina-

tion of voluminous record books, thereby saving time and expense, would be of public benefit. The plain wording of the statute embraces no more than the keeping of such a book, and to hold that the delicate and responsible duty of making and certifying to abstracts of title was thereby imposed upon the recorder, is stretching the doctrine of implication to an unwarrantable length. The fact that appellant affixed to his signature to the certificates the words "Recorder of Cook County," is a matter of no moment, if he was not authorized by law to make such certificates in his official capacity. The addition of the words must be taken to be merely *descriptio personæ.*

If then appellant, at the instance and request of appellee, rendered services not embraced within the limits of his duties as recorder, but outside thereof, as the result of which service he has money in his hands with which to compensate himself therefor, it would seem that as to him it is immaterial whether the county had or had not authority to engage in the business in respect to which such services were rendered, since if, on the one hand, the county had authority to so employ him, it had authority to pay him, and the services being rendered, a promise to pay would be implied. If, on the other hand, the county had no legal or competent authority to engage in the business of making and selling abstracts, and the doing so was *ultra vires* the corporate powers of the county board, the county could maintain no action to recover the fruits of such enterprise from its employe. In such case the law leaves the parties in the condition in which they have placed themselves, and will help neither. Thus, taking either horn of the dilemma, the plaintiff's action must equally fail. Appellant has the money in his possession, and the rule "*potior conditio defendentis*" applies. 2 Par. Con. 747; Howson v. Hancock, 8 Term, 575; City of Champaign v. Harman, 98 Ill. 491; Foote v. Emerson, 10 Vt. 338; Pepper v. Haight, 20 Barb. 429. Had appellant paid over the money to the county treasurer, and this were a suit brought by him to recover it back, the case would present a different aspect.

If the county had authority to engage in the business of

making and selling abstracts, no reason is perceived from the circumstance that appellant held the office of recorder, why the board might not employ him, as it might any other person, to take the charge and supervision of the business. The amount retained by him for his services does not appear to have been unreasonable. The supervision of a business requiring eighteen or twenty clerks, in addition to the responsibility of certifying to the correctness of abstracts, for which in case of errors or mistakes appellant might perhaps be held personally liable in damages, is a service for which it would seem a thousand dollars a year was no more than an adequate compensation. The business appears to have been managed faithfully and well, and it resulted in large profits to the county over and above all expenses.

We are of opinion that both the merits and the law of the case are with appellant, and that the judgment of the court below ought to be reversed.

Judgment reversed.