## STALLINGS *vs.* NEWMAN.

1. In slander for words spoken charging plaintiff with the crime of having murdered defendant's son, it is not necessary to aver the death of the person said to have been murdered.

2. If a demurrer is improperly sustained to a declaration, and the plaintiff then amends, he thereby waives his right to review on error the decision of the court in sustaining the demurrer.

3. What are privileged communications which will not sustain an action for slander.

4. A witness may testify that he received and understood the defendant's communication as private and confidential, in the absence of any injunction of secrecy from the defendant, or of any declaration on his part that they should be so regarded ; but whether the communication was so intended by the defendant, or, if so intended, was nevertheless prompted by malice, is a question for the determination of the jury.

5. The court having instructed the jury, "that confidential communications, made in the usual course of business, or of domestic or friendly intercourse, should be liberally viewed by juries"; *held*, that the charge was not erroneous.

6. The words declared on as slanderous, charging plaintiff with having murdered defendant's son, being shown to have been spoken while defendant and witness were alone together, going to a neighbor's house to get him to read a letter which defendant had received relative to his son's death, *held*, that defendant's declaration to witness, made in the same conversation, "that his wife was much distressed on account of her son's death", was admissible evidence for him, as tending to show that the words spoken were prompted by grief rather than malice.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. THOMAS A. WALKER.

THIS was an action of SLANDER for words spoken, brought by John Stallings against John Newman; the words charged in the first count, which are alleged to have been spoken to one William Stallings, the brother of plaintiff, are as follows: "Your clan (meaning the clan of plaintiff's said brother, and thereby meaning plaintiff) has murdered my (meaning defendant's) son"; "John Stallings, your brother, (meaning plaintiff) murdered my (meaning defendant's) son"; "Your brother (meaning the brother of said William Stallings, and thereby meaning plaintiff) has murdered my son," (meaning defendant's son, one Cornelius Newman.) In the second count the words charged were, "I (meaning defendant) am satisfied that he (meaning plaintiff) murdered him, (meaning defendant's son, one Cornelius Newman,) or took him (meaning defendant's said son) to where he (meaning plaintiff) knew it would be done;" thereby meaning and intending to charge plaintiff with having murdered defendant's said son, or with having been accessory to his murder.

The defendant demurred to each count in the declaration, and his demurrer was sustained; and thereupon plaintiff, having obtained leave to amend his declaration upon paying the costs of the term, amended each count by adding an averment that said Cornelius Newman, before the speaking of the words charged, "had died, or had been killed in said State." To the declaration as amended the defendant pleaded not guilty, and issue was joined on that plea.

" On the trial," as the bill of exceptions states, " the plaintiff offered proof tending to show that, in May preceding the commencement of this suit, one William Stallings, who was plaintiff's brother, and James Newman, who was defendant's son, had some angry words, and were about closing to fight, when they were separated by persons present ; that defendant then came up, a good deal excited, and said to said William Stallings, ' Your brother murdered my son, Cornelius Newman' ; and proved that plaintiff was the only brother of said William Stallings at that time. Plaintiff also proved by one Clayton, that at another time defendant said to him, that he (defendant) did not believe that plaintiff had murdered his son with his own hands, but that he had taken him where he knew it would be done. On cross-examination, this witness stated that, when this was said, witness and defendant were alone with each other, and no other person was present ; that they were very friendly, and had been so for a number of years ; also, a number of other things stated to him by defendant in said conversation brought out by the plaintiff ; and said, also, that at the time of said conversation, he and defendant were going from defendant's house to the house of a neighbor, to get that neighbor to read a letter which defendant said he had received relating to the death of his son, neither witness nor defendant being able to read ; and that they did go and get said neighbor to read said letter. Plaintiff then closed.

" Defendant, after having introduced the testimony of other witnesses, called said Clayton back to the stand, and by leave of the court was permitted to cross-examine him as to facts omitted ; and asked him, whether said conversation between him and defendant was not private and confidential. Plaintiff then asked the witness, whether defendant so stated such conversation to be at the time it was had ; and witness said, he did not remember that defendant did. Plaintiff then objected to the question ; but the court overruled the objection, and permitted the question to be asked, and plaintiff excepted. The witness then answered, ' I so received it and understood it.' Plaintiff then asked the court to exclude this answer ; but the court refused to do so, and plaintiff excepted. Plaintiff then renewed his objection to both question and answer,

and asked that each should be excluded, and also that both should be excluded; but the court overruled each objection, and permitted both to go to the jury, and the plaintiff excepted.

"Defendant asked said witness, also, if defendant was not much distressed at the time on account of the loss of his son, and whether defendant did not tell him, in the same conversation, that his (defendant's) wife was much distressed on the same account. Plaintiff objected to what defendant said about his wife, as being irrelevant, but the court overruled the objection; witness answered, that defendant did tell him so, and plaintiff excepted.

"Upon this state of facts, the court charged the jury, in writing—

"1. This is an action brought by the plaintiff to recover damages of the defendant for words spoken of and concerning the plaintiff. Slander may be defined to be, the false, wilful, and malicious speaking or publishing of another any defamatory words, charging him with being guilty of a felony or crime.

"2. In this action, to authorize the plaintiff to recover, it is necessary for him to prove that the defendant, maliciously and falsely, spoke, of and concerning the plaintiff, the words charged in his declaration, or some of them; and when plaintiff proves, to the satisfaction of the jury, that defendant, falsely and maliciously, spoke or uttered, of and concerning plaintiff, the words charged in the declaration, then he may recover such damages as he has sustained.

"3. To charge one of murder by killing another is actionable and slanderous, and, if falsely and maliciously spoken, warrants a recovery of such damages as the jury may think the party has sustained, commensurate with the injury sustained.

"4. The charge must be falsely made; but the falsity of the accusation is to be implied until the contrary is shown.

"5. Malice is essential to the support of an action for slanderous words; but if one, falsely, wrongfully, and wilfully charges another with a felony, the law will imply malice until the contrary is shown. On the part of the defendant it is insisted, that the words spoken by him were spoken under such circumstances as to rebut and repel all malice.

" 6. Whether this be the case or not, the jury must determine from all the proof.

" 7. For the purpose of rebutting and repelling the idea of malice, the defendant has the right to prove and explain all the facts and circumstances surrounding the speaking of the words ; also, he has the right to show and explain all the facts and circumstances surrounding the speaking of the words in mitigation of damages.

" 8. Confidential communications, made in the usual course of business, or of domestic or friendly intercourse, should be liberally viewed by juries : they should look whether the words were spoken with intent to defame, or in good faith to communicate facts interesting to one of the parties."

To the last charge the plaintiff excepted ; and he now assigns it for error, together with the other rulings of the court above stated, in sustaining the demurrer to the declaration, and in the admission of the evidence objected to.

JAS. B. MARTIN and D. W. BAINE, for appellant :

1. The demurrer to the declaration was improperly sustained.    The words used convey a direct charge of murder, and are of themselves actionable ; and no colloquium was necessary, stating the death of the person charged to have been murdered.    If he was still alive, or had come to his death in any other way than by the hand of a murderer, it was matter of defence to be shown by the defendant.—Hall v. Montgomery, 8 Ala. 510 ; Lea and Wife v. Robertson, 1 Stew. 138 ; Holly v. Burgess, 9 Ala. 728 ; Green v. Long, 2 Caines' R. 90 ;  Coons v. Robinson, 3 Barb. S. C. R. 625 ;  Cock v. Weatherby, 5 S. & M. 625 ; 1 Starkie on Slander, p. 85. The decision in Chandler v. Holloway, 4 Port. 17, does not conflict with the view here taken.   In that case the charge was, that the plaintiff had " killed" a certain person ; which charge might have been true, and yet plaintiff not have been guilty of a felony.

2. We are authorized by our statute to assign for error the judgment on the demurrer, though an amendment was allowed ; especially as the plaintiff was required, as a condition to the allowance of an amendment, to pay the cost and prove the death.—Code, § 2255.   The suit, having been brought

before the Code was adopted, is governed by the old law, which is more comprehensive.—Clay's Digest, p. 334, § 121 ; Fontaine v. Lee, 6 Ala. 889 ; Smith & Garey v. Awbrey, 19 *ib.* 63.

3. The court erred in admitting the question put to Clayton and his answer thereto, viz., that, though he did not recollect defendant's telling him that his communication was private and confidential, yet he " so received and understood it." It was but the statement of the conclusion or opinion of the witness, and his answer shows that he did not know the facts upon which the conclusion depended. The words used were actionable in themselves, and the law implies malice in their use. This malice is what the law intends to punish, and it cannot be affected by the manner in which the words were received by the person who heard them. If the fact that the charge was communicated to the witness when no other person was present, is to protect the defendant from damages, might he not repeat the same story to every citizen in the county in the same manner, and if they, though not requested, received the communication "as private and confidential", then invoke these circumstances to protect himself against the punishment which he deserves? The rule which allows the defendant, under the general issue, to prove all the circumstances under which the words were spoken in mitigation of damages, contains this proviso, viz., that the circumstances offered to be proved must tend to show the absence of malice, or to rebut its presumption. For any other purpose the attending circumstances have never been admitted ; and if they do not tend to this purpose, they are incompetent.—Root v. King, 7 Cowen's R. 613 ; Wormouth v. Cramer, 3 Wend. 395 ; Arrington v. Jones, 9 Port. 139 ; Douge v. Pearce, 13 Ala. 127. The evidence here, so far from showing the absence of malice, discloses the character of a cool, deliberate, and astute slanderer ; cunningly and secretly blackening the name of his victim in the estimation of those with whom he may most injure him, and at the same time protecting himself from exposure and punishment by leaving the impression that his communication is "private and confidential." Such an abuse of the rule will not be tolerated.

4. To ascertain whether the evidence was relevant, is to

determine whether it tended to prove the issue joined. The issue joined was, whether the defendant spoke the words laid in the declaration ; with liberty to him, if he had done so, to show the absence of malice in mitigation of damages. Under this issue, the defendant was allowed to prove, that he told the witness, in the same conversation in which he used the words laid, that his wife was greatly distressed on account of the death of her son. The statement of this evidence is sufficient to show that it was illegal, and that its only effect could be to mislead the jury, by creating in their minds a false and illegitimate sympathy for the defendant. It is said, that this evidence was competent, because it was a part of a conversation called out by the plaintiff. But the rule here invoked goes no further than to allow all the conversation that is competent and legal within itself, and relevant to the issue joined, and is only illegal because made by the declarations of the party desiring to use them.—7 Phil. Ev. 340.

5. The eighth charge given by the court was erroneous. Privileged and confidential communications have a technical legal meaning. They form an exception to the general rule, that the law implies malice from the use of words which are actionable in themselves. What privileged and confidential communications are, is fully shown by the case of White v. Nicholls, 3 How. U. S. R. 266 ; and that case is fully sustained by the following authorities : Proser v. Bromage, 4 Barn. & Cr. 247 ; Pasley v. Freeman, 3 Term R. 51 ; Vanspike v. Cleyson, Cro. Eliz. 541 ; Jarvis v. Hatheway, 3 Johns. 180 ; O'Donaghue v. McGovern, 23 Wend. 26 ; Easley v. Moss, 9 Ala. 266 ; Sewall v. Catlin, 3 Wend. 291. To bring a case within the first exception, the author of the slander must have acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests. But this charge assumes, that one man may slander his neighbor to any extent ; *provided*, he does it in a private and social way, and one of the parties feels an interest in the subject. If this be the law, no slanderer could be too vile to escape. The law, however, demands that the communication should be required for the protection of the interest of one party or the other.—Grimes v. Coyle, 6 B. Mon. 301. Conceding that such a construction could be given to this charge

as to make it conform to the law, it would still be erroneous, because there was no evidence upon which to predicate it. It is evident from the proof, which is all set out in the bill of exceptions, that the jury were bound to find a verdict for the plaintiff; and that they did not do so, can only be accounted for on the supposition that they were misled by the charge, which was its necessary tendency.—Hollingsworth v. Martin, 23 Ala. 591; Carter v. Chaudron, 21 *ib.* 72; Seawell v. Henry, 6 *ib.* 226; Toulmin v. Lesesne, 2 *ib.* 359; Cothran v. Moore, 1 *ib.* 423; Morrison v. Judge, 14 *ib.* 182; 23 *ib.* 655.

M. J. TURNLEY, *contra:*

1. The demurrer to the declaration ought to have been sustained. Each count was defective in not averring the death of the person alleged to have been murdered. If the words, " He is a murderer," are in themselves actionable, and require no *colloquium* alleging the death of any particular person, it is because of the well-known fact that many murders have been committed, and the charge would imply that the accused was guilty of some of them. But where the charge goes further, as in this case, and specifies the particular individual alleged to have been murdered, it is no longer a general term of known legal import, but requires an additional averment of the death of that individual to make it actionable. A charge of the murder of A, who is known to be still living, is not a crime punishable by law, and cannot subject the accused to the penalties of the law against murder. In support of this position, see Chandler v. Holloway, 4 Port. 17; 1 Starkie on Slander, p. 79.

2. The testimony of the witness Clayton was properly admitted. Under the plea of not guilty, the defendant was authorized to prove all the circumstances attending the speaking of the words in mitigation of damages.—Williams v. Cawley, 18 Ala. 206; Wright v. Lindsay, 20 *ib.* 428. It was shown that defendant and Clayton were intimate friends of long standing; that defendant had received a letter in relation to the death of his son; that he and his wife were much distressed on account of their son's supposed death; that he and Clayton were alone, going to a neighbor's house to get him to read the letter. All these circumstances conclusively show,

that the words were spoken in private confidence, and that they emanated from a sorely troubled heart, and were uttered in deep grief and not in malice. The evidence objected to was not the statement of a conclusion or opinion of the witness. The witness *knew*, from the intimacy and friendship long subsisting between him and defendant, and from all the circumstances attending the communication, that it was private and confidential; and he did not need to be told so by the defendant.

3. The communication was certainly, not only private and confidential, but also privileged.—1 American Leading Cases, p. 180. The evidence was admissible, not only because the communication was private, and confidential, and privileged, but for the purpose of showing the circumstances under which the words were spoken, as tending to show the want of malice. Williams v. Cawley, and Wright v. Lindsay, *supra*.

4. The same authorities show that the charge of the court on the subject of private and confidential communications was correct.

5. Plaintiff having proved a part of the conversation between Clayton and the defendant, the latter had a right to the whole of the conversation, and all the attending circumstances.

6. If the evidence objected to not only failed to show the want of malice, but, as the appellant insists, "*disclosed the character of a cool, deliberate, and astute slanderer*," how was the appellant injured by the admission?

CHILTON, C. J.—There are some old cases which would justify the court in holding the original declaration in this case bad. The case of Sir Thomas Holt v. Aftgrigg, 2 Cro. R. 184, may be cited. In that, the words were, "Sir Thomas struck his cook on the head with a cleaver, and cleaved his head; the one part lay on one shoulder, and another part on the other." The verdict against the defendant was arrested in the King's Bench, upon the ground, that "slander ought to be direct, against which there may not be any intendments." See also Prichard v. Hawkins, *ib.* 215; Holland v. Stoner, *ib.* 315; 4 Co. R. 20; Roll. Ab. 72; Hob. 6, 77, 177.

The doctrine upon which these, and a number of odd cases

rests, to-wit, that slander must be direct so as to exclude every intendment, and that words, in all cases, must be taken *in mitiori sensu*, has been exploded for more than a century. As far back as 1721, the same court held, that to say of a certain person "that is the man who killed my husband," is actionable.—8 Mod. 24. Pratt, C. J., in delivering his opinion, said, "We are to understand words in the same sense in which the hearers understood them; but when words stand indifferent, and are equally liable to two distinct interpretations, we ought to construe them *in mitiori sensu;* but we will never make any exposition against the plain, natural import of the words."

Fortescue, J., said, the rule, to expound the words in the milder sense, had at that time been exploded fifty or sixty years.

So, in a late case, Tomlinson v. Brittlebank, 4 Bar. & Adol. 630, it was held, the words "he robbed J. W." were actionable, as imputing an offence cognizable by law, and that if the words were used in any other sense, the defendant must show it.

The true rule requires, that words should be construed according to their obvious meaning, and taken in that sense in which those who hear would understand them.—McGowan v. Manafee, 7 Mon. R. 315 ; Hoyle v. Young, 1 Wash. R. 152 ; Hay. R. 116 ; 2 Dev. & Bat. R. 274 ; 9 New Hamp. R. 156.

Applying this rule to the facts averred in the declaration, we entertain no doubt that the declaration demurred to was sufficient. When it is said, A murdered B, the sense in which such expression would be understood evidently would be, that A killed him under such circumstances as would constitute him guilty of the crime of murder ; and the words clearly imputing an imputation of the crime of murder, we are not prepared to say, that if those in whose presence and hearing they were spoken had well grounded reason to believe the person said to have been murdered was dead, the plaintiff, who is the sufferer by the slander, should not recover, although the defendant may prove that the person alleged to be dead is still alive. That he would be so liable, was expressly decided by the Supreme Court of North Carolina.—See Tugart v. Carter, 1 Dev. & Bat. 8.

So in Tenney v. Clement, 10 New Hamp. 52, it was held,

in an action for words charging the plaintiff with the crime
of murder, that it was not necessary to allege or prove the
death of the person said to be murdered—that it was suffi-
cient if the existence of the person alleged to have been mur-
dered was not known to those in whose presence the words
were spoken. This is merely giving effect to the rule previ-
ously laid down—that is, construing the words in the sense
in which the bystanders may fairly understand them.

It follows from what we have said, that the court improper-
ly sustained the demurrer to the declaration as it originally
stood. The plaintiff, however, did not repose upon the de-
cision, and seek a reversal in this court, stopping the cause at
that stage of the proceeding, by suffering judgment to be ren-
dered on the demurrer. He amended his declaration, and
went to trial on the declaration as amended, and thus waived
his right to review the decision of the court upon the demur-
rer. Such was clearly the law before the statute (Caldwell
v. May, 1 Stew. 425), and the statute only reserves the right
to review the decision of the court upon the demurrer when
the court overrules such demurrer, and the demurrant pleads
over.—Clay's Digest, p. 334, § 121.

In relation to the confidential communication of the words
charged as slanderous, as proved by the witness Clayton, we
need only observe, that, although they do not fall within the
class of privileged declarations which constitute exceptions to
the general rule of implying malice from slanderous express-
ions, yet that they were received by an intimate friend, to
whom alone they were communicated at that time, as private
and confidential, certainly goes as a circumstance to mitigate
the damages, as tending to disprove malice.

Privileged communications are said to be of four kinds—

1. Where the author of the alleged slander acted in the
*bona fide* discharge of a public or private duty, either legal or
moral, or in the prosecution of his own rights or interests.

2. Anything said, or written, in good faith, by a master, in
giving the character of his servant who has been employed
by him.

3. Words used in the course of a legal or judicial proceed-
ing, however hard they may bear upon the party of whom
they are used ; and

4. Publications duly made in the ordinary course of parliamentary proceedings ; as a petition printed and delivered to the members of a committee appointed by the Legislature to hear and determine grievances.—White v. Nicholls, 3 Howard's U. S. Rep. 266.

So, also, expressions of suspicion, based upon facts detailed, confidentially and prudently made to discreet persons, in good faith, to direct their watchfulness and enlist their aid in the detection of persons supposed to be guilty of felony, which expressions are not more extended than the circumstances of suspicion justify, give the party injured no right to maintain an action of slander, since the public interest requires that such communications should be made, that offenders may be detected.

Applying these rules to the case before us, we think that Clayton might well testify that he received the communication from the defendant as private and confidential, in the absence of an injunction of secrecy, or of any declaration on the part of the defendant that they should be so regarded. That he so received and understood the communication, was a fact to which he could testify ; but whether the words spoken were so intended by the defendant, or if so intended, they were notwithstanding prompted by malice, was a question for the jury.

Nor was there any error in the charge, that confidential communications made in the usual course of business, or of domestic or friendly intercourse, should be liberally viewed by juries.

What the defendant said to Clayton, as to the distress of his wife by reason of the receipt of the news of the death of his son, was not entirely foreign from this case. It served to show the condition of the defendant at the time he spoke the words, and tended to show that these words were prompted by grief, rather than by malice. It tended to explain the motive, and may be considered as part of the *res*.

We have carefully examined the charges of the court, and are of the opinion, when they are referred to the testimony in the cause on which they are predicated, they correctly assert the law applicable to the case.

There is no error in the record, and the judgment is affirmed.