JAMES ELAM, Appellant, *v.* MALTHACE BADGER, Appellee.

APPEAL FROM CLARK.

In an action of slander, for words charging the plaintiff with fornication or adultery, no reference need be made in the pleadings to the statute on that subject.

Words, which in their common acceptation, amount to a charge of fornication, are slanderous, and are actionable without colloquium or innuendo; and the latter, if used, is, at most, but surplusage.

Where the defense in such a case rests on the ground of privileged communications, it must be shown that the words were spoken at such a time, and under such circumstances as would negative the supposition of malice in using them.

This court will not disturb a verdict by which substantial justice has been done, on account of instructions having been incorrectly given or refused, nor because the jury have disregarded them.

THIS was an action on the case, commenced by Malthace Badger, in the Clark Circuit Court, against James Elam, for an alleged defamation of the character of plaintiff by slanderous words spoken by defendant.

The declaration contained two counts, each of which embraces divers sets of words, upon which the plaintiff seeks to maintain her action in that behalf.

The first count, after setting out the formal inducement, proceeds with the colloquium, that " on the day and year aforesaid, at the county and State aforesaid, in a certain discourse which the said defendant then and there had of and concerning the said plaintiff, in the presence and hearing of divers good and worthy

citizens of this State, and then and there, etc., falsely and maliciously spoke and published of and concerning the said plaintiff, and of and concerning the said charge of fornication, and thereby intended to charge the said plaintiff with having been guilty of said crime of fornication, and then and there intended that said citizens, who then and there heard said charge, should so understand said defendant, and who then and there did understand said defendant, the false, scandalous, malicious and defamatory words following, that is to say: " Newton Kiger told me (meaning defendant) that he (Newton Kiger meaning) had screwed Miss Badger," (meaning plaintiff.) " There is a man on the ground here that heard him (meaning Newton Kiger) say so." " The man saw Kiger screw her (meaning plaintiff) once." " Newton Kiger told me (meaning defendant) that he (Newton Kiger meaning) had screwed Mollie Badger" (meaning plaintiff.) " Newton Kiger told me (meaning defendant) that he (Newton Kiger meaning) had screwed Mollie Badger (meaning plaintiff) at Elijah Stevens'." " Robert Smith told me (meaning defendant) that he (Robert Smith meaning) had heard of a number of men who had done the same thing." Meaning thereby then and there to charge that the said plaintiff, being and always having been an unmarried woman, had been and was guilty of the crime of fornication."

The second count charges that the defendant, " further contriving, etc., falsely and maliciously spoke of and concerning the said plaintiff, of and concerning the said charge of fornication, and thereby then and there intended to charge the said plaintiff with having been guilty of said crime of fornication, and then and there intended that said citizens who then and there heard said charge should so understand said defendant, and who then and there did so understand said defendant, the false, scandalous, malicious and defamatory words following, that is to say: " Newton Kiger told me" (meaning defendant) " that he" (Newton Kiger meaning) " had had criminal intercourse with Mollie Badger," (meaning plaintiff.) " Newton Kiger told me" (meaning defendant) " that he" (Newton Kiger meaning) " had had criminal intercourse with Miss Badger" (meaning plaintiff.) " Newton Kiger has screwed Mollie Badger" (meaning plaintiff.) " Newt. Kiger has screwed Mollie Badger" (meaning plaintiff.) " Kiger has screwed Mollie Badger" (meaning plaintiff.) " Henry Elam saw Newton Kiger screw Mollie Badger" (meaning plaintiff.) " Newton Kiger told Henry Elam that he" (meaning Newton Kiger) " had screwed Mollie Badger" (meaning plaintiff.) " Henry Elam saw Newton Kiger screw Miss Badger" (meaning plaintiff.) " Newton

Kiger acknowledged to Henry Elam, that he" (Newton Kiger meaning) " had screwed Miss Badger" (meaning plaintiff.) " Newt. Kiger acknowledged to Henry Elam that he" (Newton Kiger meaning) " had screwed Mollie Badger" (meaning plaintiff.) " Newton Kiger acknowledged to Henry Elam, that he" (Newton Kiger meaning) "had screwed Mollie Badger" (meaning plaintiff.) " Newt. Kiger acknowledged to Henry Elam, that he" (Newton Kiger meaning) " had screwed Miss Badger (meaning plaintiff.) " Kiger acknowledged to Henry Elam, that he" (Kiger. meaning) " had screwed Mollie Badger" (meaning plaintiff.) " Kiger acknowledged to Henry Elam, that he" (Kiger meaning) " had screwed Miss Badger" (meaning plaintiff.) " Henry Elam saw them" (meaning plaintiff and said Kiger) " in the act." Meaning thereby then and there to charge that the said plaintiff, being and always having been an unmarried woman, had been and was guilty of the crime of fornication." Then follows the common conclusion to a declaration in action for slander, laying plaintiff's damages at five thousand dollars, etc.

The defendant pleaded the " general issue" with a notice of defense purporting to be special matters. In this issue the plaintiff joined, and at September term, A. D. 1859, the same was tried before HARLAN, Judge, by a jury, who found the defendant guilty, and assessed the plaintiff's damages at one thousand dollars; whereupon the defendant moved the court in arrest of judgment and for a new trial; which motions were denied, and a judgment was rendered on the verdict.

Defendant below prayed this appeal.

C. H. CONSTABLE, for Appellant.

J. SCHOLFIELD, for Appellee.

BREESE, J. Under our statute, (Scates' Comp. 1137,) if any person shall falsely use, utter or publish words, which in their common acceptation shall amount to charging any person with having been guilty of fornication or adultery, such words so spoken shall be deemed actionable, and he, she or they, so falsely publishing, speaking or uttering the same, is deemed guilty of slander. In pleading, no reference need be made to the statute. It is a public law, and is knitted in with the charge.

The set of words in this declaration, which were proved, do, in their common acceptation, amount to a charge of fornication, and are therefore slanderous; and those who heard them spoken, are supposed to understand them according to their plain im-

port. *Hatch* v. *Porter and Wife*, 2 Gilm. 726; *Edgar* v. *Mc Cutcheon*, 9 Missouri, 769.

The motion in arrest of judgment in this case was properly overruled, the words being actionable. After verdict they must be taken to have been proved as laid, and with the intent imputed in the declaration, (Starkie on Slander, 44,) and courts and juries will understand them in the same way that other people would.

It is objected that, strictly speaking, there is no such crime as fornication under our statute — the only offense provided for and punishable being that of living together in an open state of adultery or fornication, or adultery and fornication, and therefore the declaration was bad, there being no inducement or other statement that the words related to such an offense as is described in the statute, and the innuendo was not warranted. This may all be, but as we hold the words are actionable of themselves, without colloquium or innuendo, the innuendo was unnecessary, as it is a statement of a mere legal conclusion, it is improper in such cases. But it is not a fatal defect — at most it is but surplusage, and may be stricken out without injury to the pleadings — they would be good without the innuendo.

The great struggle on the trial of this cause, was to make out the defense on the ground that the statements on which the slander was based, were privileged communications.

The doctrine is well settled, that for such communications, made with honest motives, and for justifiable ends, the party making them is not responsible, the case being disrobed of one important element to constitute it slander, that is, malice, either in law or in fact. The law makes the issue to depend in these cases upon the existence or absence of this element. Thus the most ample shield of protection is extended to all who act fairly and prudently, in order that men may not be deterred by the fear of a civil action or a public prosecution, from making communications which are either important to themselves or beneficial to others. The most common cases of this kind, are those which have arisen from actions brought by servants against their masters. Lord Ellenborough, C. J., in *Hodgson* v. *Scarlett*, 1 Barnwell and Alderson, 240, 4 Eng. C. L. R. 114, said: "In the case of master and servant, the convenience of mankind requires that what is said in fair communication between man and man upon the subject of character, should be privileged, if made *bona fide*, and without malice. If, however, the party giving the character, knows what he says to be untrue, that may deprive him of the protection which the law throws around such communications.

Many cases might be referred to, illustrating the general

principle that a publication warranted by an occasion apparently beneficial and honest, is not actionable in the absence of express malice. But in all these cases where the occasion is sufficient to raise the question of actual malice, the doctrine must be understood with this limitation — that the times and mode of the speaking the words are suited to the occasion. No speaking of slanderous words can be justified, which is not warranted by the occasion and circumstances. Testing this case by these principles, it will be seen, the facts fall far short of showing that the words charged were spoken at a time and under circumstances to warrant their being spoken. Harrison B. Hall, as treasurer of the school district, had no authority to employ a teacher in it, nor a voice or vote even, in the selection of a teacher, and Kuykendall, Lee and Murphy, to whom the defendant repeated the charge, had no official position in the school district. The jury, then, had a right to believe the statement was made of malice, and not for justifiable ends. Admitting that the defendant might have made these statements to the school directors, who alone can employ teachers, with a view to a proper selection of a teacher of his own children, he had no authority to make them to those not connected in any way with that matter, and he cannot claim any privilege from the fact that he was a resident of the district and a patron of its schools. This point of the case was distinctly presented to the jury, in the instructions of both parties. It was left for them to say, with what intent the defendant spoke the words, and they have found, it was with a malicious intent. The case was presented to the jury in every variety of aspect by the instructions, none of which, given for the plaintiff, were objectionable. Two of those refused, asked by the defendant, might perhaps, without impropriety, have been given ; but as the principles involved in them had been fully stated in 'other instructions which were given for the defendant, we cannot think the giving of them in the precise terms asked, would have altered the finding. We have repeatedly said, that although the court may have refused proper instructions, or given improper ones, or when the jury have found against the instructions, yet, if the record shows that substantial justice has been done, a verdict ought not to be disturbed. *Leigh* v. *Hodges*, 3 Scam. 17 ; *Smith* v. *Schultz*, 1 ib. 491 ; *Gillet* v. *Sweat*, 1 Gilm. 475 ; *Newkirk* v. *Cone*, 18 Ill. R. 454 ; *Young* v. *Silkwood*, 11 ib. 36 ; *Greenup* v. *Stoker*, 3 Gilm. 202. The merits of this case are most clearly with the plaintiff below. A young woman, whose only employment is teaching a school of both sexes, is charged, by one occupying a high position in the district in which she sought employment, with an offense, which of all others is the most sure to degrade

her, and to deprive her of employment.  That was the effect in this instance.  The plaintiff was obliged to quit her school, and retire from the neighborhood, the victim of the licentious tongue of one who should have been among the last to countenance and give currency to such a charge.

We see no error in the proceedings sufficient to disturb the judgment, and we accordingly affirm it.

*Judgment affirmed.*