## JOHN H. JARNIGAN *v.* WILLIAM T. FLEMING.

1. SLANDER—MALICE—PROVINCE OF JURY—When, in an action for slander, the slanderous words alleged are not in foreign or technical language, and not ambiguous nor uttered in fable, question, enigma or the like, but are such plain and ordinary words as are in common use, an instruction to the jury that unless the words used were understood by the hearers to have been uttered in a malicious or slanderous sense they must find for the defendant, is erroneous. In such case it is the judgment of the jury, and not the opinion of the hearers of the words, that must determine whether they were slanderous and malicious or not.

Assignment of errors.

2. INSTRUCTIONS—TECHNICAL LEGAL TERMS MUST BE EXPLAINED TO A JURY.—It is error to instruct a jury in technical phraseology without explanation, because such terms are liable to mislead the jury.

3. SAME—ABSTRACT LEGAL PROPOSITIONS.—It is error for a court to instruct the jury upon abstract legal propositions inapplicable to the evidence, however correctly such propositions may be stated.

4. SLANDER BY MALICIOUS PROSECUTION.—A slander may be perpetrated by means of a malicious suit. Such a suit may be a most effective means for propagating it and in many cases an action will lie for a slander propagated by this means. *Semble:* That in such case the party injured may at his option prosecute and recover upon either an action for slander, or for malicious prosecution.

5. PARTY'S OWN WITNESS.—It is a fatal error for the court to instruct a jury that a party introducing a witness thereby endorses the credibility of such witness. It is sufficient to say that a party cannot impeach his own witness.

6. SLANDER—DEFENSE UNDER GENERAL ISSUE.—Under the general issue in an action for slander the defendant may give in evidence any mitigating circumstances to reduce the damages, Rev. Code, 493, art. 96, but cannot give evidence proving or tending to prove the truth of the slanderous words.

7. SAME—MALICE PRESUMED.—Slanderous words, unless privileged or otherwise uttered under circumstances repelling the presumption of malice, will be presumed to have been malicious.

8. REPETITION OF THE SLANDEROUS WORDS OF ANOTHER—RESPONSIBILITY.—If the slander be a repetition of what another has said, the repetition, to excuse the person repeating them from liability as a malicious slanderer, must be in the precise words of his author, and his author must be a solvent and responsible person from whom the person injured may recover, and the author's name must be given at the time. And, even then, the liability of the person repeating the words will depend upon the motive with which the words were repeated.

9. PRIVILEGED COMMUNICATIONS.—These are such words as are uttered upon a just, suitable and proper occasion, with good motives, and without malice.

10. PLEA AND PROOF OF TRUTH, IN JUSTIFICATION.—The plea of truth, in justification of slanderous words, admits that the defendant uttered them as alleged. The plea should be specific to every particular of the declaration, and the proof must be full and complete, or the plea will fail.

11. GENERAL PRINCIPLE.—Character being far more sacred than property, should be protected by courts and juries with watchful care.

In error to the circuit court of Tippah county.    BOONE, J.

The plaintiff in error assigned the following errors:

1st. The circuit court erred in giving the 2d, 3d, 4th, 5th and 6th instructions asked for the defendant, and in each of them.

2d. The court erred in overruling the plaintiff's motion for a new trial.

3d. The court erred in permitting Mrs. Fleming, wife of the defendant, to testify as a witness for her husband, against the objection of the plaintiff.

*J. W. Thompson,* for plaintiff in error.

In an action of slander, under a plea of justification, the truth operates as a bar to the action, and not in mitigation of damages.   1 Starkie on Slander, 233, note 1 ; and defendant must prove the truth of the averments of his plea, with great precision.   Ib., 235.   The strongest suspicion falls short of justification. Ib., 237, 238; 11 Johns. R., 38; 19 ib, 349.   It is admitted that under our statute, where the defendant may plead double, the plaintiff is bound to prove the words as charged; but we insist that the statements of the special plea of justification are admissible to show the *quo animo* with which they were made.   See Doss v. Jones, 5 How., 164; . 3 Mass. R., 553.   Also, 1 Stewart's Ala. R., 138.   The plea of justification, unsustained by proof, conclusively implies malice, unless in privileged cases.  1 Hilliard on Torts, 334, § 107; ib., 350, §§ 343, 344; ib., pp., 410, 411, 412; 13 Ala., 127 ; 5 Ind., 426 ; 2 Strange, 1200; 29 Maine, 1; 1 Douglass, 321 ; 13 Johns. R., 475 ; Van Ankill v. Westfall, 14 Johns., 234. Also, Manning v. Clement, 7 Bing., 367; 2 Greenl. Ev., § 424; 15 Ala., 663 ; 1 Hilliard on Torts, 414, § 181; 3 Hawk., 395; 5 Leigh, 695.

In an action of slander, if the defendant pleads the truth in justification, he is bound to prove the very fact pleaded, and not one of a similar character, although even of greater enormity.   1 Hilliard on Torts, 418, § 183; 10 Verm., 353; 11 Johns. R., 38.   The repeater of slander must give the very words used by the author; for the plaintiff, to maintain his action, must state the very words used by the defendant.   1 Starkie on Slander, 334; 1 Hilliard on Torts, 418, 419, § 183 ; 4 Iredell, 461.   As to the special plea of justification, and the proof necessary to sustain it, see 10 Humphreys, 461 ; 1 Hilliard on Torts, 442, § 188; 1 Smith, 287; 6 Barr, 170 ; 8 Blackf., 495; 25 Maine, 315; 3 Barbour, 599 ; 1 Cart., 92; ib, 544. See also, 7 Term R., 17; Hilliard on Torts, 428 ; 5 B. Monroe, 519 ; 8 B. Monroe, 16 ; 12 Vermont, 456.

A plea of repetition must show that plaintiff had at the time, a certain cause of action against another responsible

person, by naming him at the time, and giving the exact words used. Hilliard on Torts, 430, § 194; Scott v. Peebles, 2 S. & M., 559. And this author must be pecuniarily responsible. 3 Dana R., 432; 2 Greenl. Ev., §§ 378, 379, note 2; Dale v. Lyon, 10 Johns. R., 447; DeCrespeigny v. Wellesley, 5 Bing. (English), 392; 1 Starkie on Slander, §§ 337, 338, 339, and 340, and notes.

The good or bad character of the plaintiff is always important in an action of slander; and either party may bring proof regarding it. Per Kent, in Dale v. Lyon, *supra*, " individual character must be protected, or social happiness and domestic peace are destroyed." Starkie on Slander, 340; Mapes v. Weeks, 4 Wendell, 659; Inman v. Foster, 8 Wendell, 602; 3 Yates, 518. As to evidence in mitigation of damages, see 2 Greenl. Ev., §§ 424, 425, and notes.

The second instruction given on behalf of the defendant was calculated to mislead the jury. The law presumes that slanderous words, spoken in a language understood by the hearer, if slanderous in their common acceptation, were so understood by the hearer, malice is conclusively implied from the deliberate utterance of a slanderous charge. The defendant is presumed to intend the natural consequences of his own act. Hilliard on Torts, 333, 334, and notes and cases referred to. There was no ambiguity in the language used, and it was easily understood. Ib., 288–296, § 57; ib., 423, § 106; ib., 293, §§ 57, 58; 1 Starkie on Slander, 45, 46, 47; ib., 60; 5 Johns. R., 221; 2 Wend.. 534; 4 Wend., 320. Also, 1 Starkie on Slander, 79, 80–88, 89; 2 Greenl. Ev., 365, 366, § 414, note 1, on p. 366. Malice is a conclusion of law which the plaintiff is not bound to prove, nor the defendant permitted to deny. Hilliard on Torts, 333, 334, § 107; also ib, 342, §§ 116, 117.

The sixth charge for the defendant goes too far. The party calling a witness on the stand, even if he has him sworn and examines him, does not thereby endorse his credibility. The rule is that a party calling a witness, cannot discredit his testimony or show his incompetency; but he will not be pre-

cluded from proving his case by other testimony. 1 Starkie on Ev., 159.

The action of the court in refusing to grant a new trial was manifestly erroneous ; the verdict of the jury is contrary to the evidence, and in direct opposition to the eighth instruction given for the plaintiff. The testimony abundantly shows that Maggie Little, the author given by defendant, is notoriously insolvent, and wholly unable to respond in damages. 1 Starkie on Slander, 340 ; 2 S. & M., 559. In this last case, Sharkey, C. J., says : "It is said (the giving of the author) to constitute a valid defense, because it gives the injured party ample redress by pointing out to him a responsible author of the slander." " The injured party cannot be turned over to one who is unable to make complete reparation." 1 Starkie on Slander, 332, 333.

Where the defendant pleads justification in an action of slander, and fails to sustain his plea, the law implies malice ; and the plaintiff is not bound to further prove, nor will the defendant be permitted to deny this implication. Hilliard on Torts, 333, § 107 ; ib., 476, 477, and 425, §§ 190–193-196.

*Geo. L. Potter*, on same side.

It should be remembered that the second, third, and fourth counts of the declaration are brought upon the statute which makes such words actionable as are considered as insults and leading to violence and breaches of the peace. Rev. Code, 385. Under this statute it is no defense merely to prove the truth of the charge. True, words may be insulting and lead to violence. Such words need not be spoken to or in the presence of the plaintiff. Scott v. Peebles, 2 S. & M., 558-9. We can imagine no possible good motive on the part of the defendant for proclaiming that Margaret was pregnant by plaintiff, nor in proclaiming that she admitted the fact. At the time when he made the charge, professing to seek advice as a friend, it is not shown that he did more than make the charge against the plaintiff. The real purpose seems to have been to repeat the charge, and to prejudice men against the plaintiff.

It is thus that defendant is presented by the evidence. He had no just excuse for making those charges, and yet the jury gave their verdict for him. The utterance by defendant of the slanderous words, as charged in the several counts of the declaration, is proved. Those charges are, first, that plaintiff had seduced and cohabited with Margaret, and had got her with child; second, that they were caught in bed together; third, that defendant believed that plaintiff was guilty of fooling her and getting her with child; fourth, that she was detected in the act of sexual intercourse with plaintiff. The proof shows that defendant did make these charges. The plea of justification asserts the truth of these charges, and this plea was filed after Margaret had been delivered of a negro child. Thus defendant repeated the slander, knowing that the charge, as to paternity of the child, was false. The *animus* of defendant is clear. As we have seen, defendant in some cases made a direct charge against plaintiff, and it is vain for him to say that he stated further that Margaret made the same charge.

In the third count the statement is that defendant said he believed that plaintiff was guilty of fooling Margaret and getting her with child, and the witness proves that defendant made the statement. Thus he endorsed the charges, and it is vain for him to add that Margaret also made such charges. The evidence does not establish any defense. We may admit as true all that defendant and his witnesses attempt to prove, and still there is nothing to justify the verdict for defendant. It is not necessary to discuss the very erroneous charges given for defendant. The second charge directs the jury to find, generally, for the defendant, if they believe, from the evidence, that the words used by him were not understood by the hearers in a malicious or slanderous sense. The slander might be never so bold, and yet the defendant must go clear, if the hearers did not understand that it was a malicious or slanderous charge; and if they did not so understand it, why then, even our first count for malicious prosecution must also fail. Defendant might proclaim

that he endorsed the charge, and believed it to be true, that plaintiff had fooled Margaret and got her with child, and yet he could not be held liable if the hearers did not understand the statement in a malicious or slanderous sense.

The third charge directs a verdict for defendant if he uttered the slanders only from a moral and legal sense of duty to one under his care and protection. Under this charge it was immaterial whether the words of defendant were true or false, or whether he uttered them for good cause, and the sole question was whether or not defendant uttered them from a moral and legal sense of duty. No matter how false that sense might be, it was all the same, and was to prevail against the count for malicious prosecution as well as those for slander.

The fourth charge assumes, against an express decision of the late· high court, the moral position that proof of the charge is a full defense to an action, under the statute, for uttering insulting words. The singular mistake is made that such charges do not lead to a breach of the peace, which it was the object of the statute to prevent.

*Stricklin & Stricklin,* for defendant in error.

For definition of the term slander, *vide* 2 Bouvier Law Dictionary; intent of words, *vide,* 1 Hilliard on Torts, § 243; as to existence of malice, *vide,* 1 Hilliard on Torts, § 333; repetition of slander, *vide,* 1 Hilliard on Torts, §§ 335 and 108; also, 1 Starkie on Slander, § 331; charge caused by misconduct of plaintiff, *vide,* 4 Caldwell Rep., 29–31; also, 2 Greenleaf, § 424, 425; words spoken in discharge of duty, either public, private, or moral, *vide,* 1 Hilliard on Torts, p. 342, § 116 and 117; also see 2 Humphrey's Rep., 512; words as understood by hearer, *vide* 2 Starkie on Slander, § 51; also 1 S. & M. Rep., 458 and 463; also 1st Hilliard on Torts, p. 292, § 57; mitigation of damages, 2 Swan. Rep., 32.

*Johnston & Johnston,* on same side.

Plaintiff in error insists that the verdict of the jury was

erroneous, as being contrary to the evidence and the law, and as being contrary to the instructions of the court, and assigns as error the refusal of the court to grant a new trial. It is also assigned as error the granting of second, third, fourth, and fifth instructions for defendant; and lastly the admission of the wife of the defendant as a witness for him. The question as to the correctness of the verdict is whether or not it is clearly against the weight of evidence, or whether a great preponderance of evidence appears against it. Ellzey v. State, 5 S. & M., 21 ; Leflore v. Justin, 1 S. & M., 381 ; Dickson v. Parker, 3 How., 838.

We insist that the action of the defendant, both as to the suit by Miss Little, and the words spoken by himself, were induced by a sense of private and moral duty. 1 Hilliard on Torts, 318, § 1. Express malice must be proved, and the *onus* rests upon the plaintiff. Ib., pp. 311, 318, § 1 ; ib., 317, § 1, note *c*, and cases cited. In this class of cases plaintiff must show want of probable cause. 1 Hilliard on Torts, 335, § 16, note 2. As to confidential communications, see ib., pp. 230, 231 ; ib., 347, § 26. As to the *quo animo* of the defendant, see 1 Hilliard on Torts, 192, § 52.

It is insisted that the instructions to the jury, complained of by plaintiff were substantially correct, but will only refer to a part of them. In support of the proposition contained in the second, we refer the court to 1 Hilliard on Torts, 228, § 4, note 2, and cases cited. In support of the third instruction, see 1 Hilliard on Torts, 308, § 1 ; ib., § 2 ; ib., 381, § 1, note 1, and cases cited. As to malice and want of probable cause, see 1 Hilliard on Torts, 417, § 4, note 1, and cases cited.

As to the objection to the admission of Mrs. Fleming wife of the defendant, as a witness on his part, we reply that no objection was taken to it at the time, nor to any portion of her testimony. Under the settled practice of this court, this point cannot now be raised. 3 How., 214; 4 ib., 90; 8 S. & M., 193 ; 27 Miss., 362; ib., 739 ; Neely v. Planters Bank, 4 S. & M., 113.

*W. C. Falkner*, on the same side.

A new trial will never be granted where the evidence is conflicting, and the propriety of the verdict depends upon the credibility of the witnesses examined. See 35 Miss. R., 381. In this case the evidence, although conflicting, greatly preponderated in favor of the defendant, because the witness, Miss Maggie Little, was introduced by the plaintiff. She testified that the plaintiff had promised to marry her, and to give her a better home than the one she had, and that the plaintiff, Jarnigan, had sexual intercourse with her three times. This proof was made by the plaintiff's own witness, and he cannot be heard to discredit his own witness. See 1 Phillipps on Ev., 308, 309.

We contend that the court erred in permitting the depositions of Little to be read, because Daniel Hunt, who took the depositions, was no officer, nor was he by law authorized to administer oaths. See Rev. Code, p. 514, art. 214. That statute says that commissions to take depositions may be directed to one or more commissioners by name, or to any other person authorized by law to administer oaths. We think it is very clear that none but persons authorized by law to administer oaths, can lawfully take a deposition. "Where there is a conflict of testimony, the verdict will not be set aside unless it be very clearly wrong." 31 Miss. R., 314; Garland v. Stewart et. al., 8 S. & M., 305–313; 30 Miss. R., 369–387; 35 Miss. R., 382–384–559–580, 581.

TARBELL, J.:

This is an action on the case for slanderous words spoken. The declaration contains four counts. The first count charges that the defendant falsely and maliciously stated that plaintiff was guilty of seducing and cohabiting with one Margaret Little, being in the family of defendant, and of causing her to become pregnant and with child—the defendant at the time knowing the plaintiff to be innocent. This count further charges that defendant maliciously procured and induced one Thos. D. Little, uncle of Margaret Little, to bring a suit at law, as her next friend, against plaintiff for a breach of mar-

riage contract between plaintiff and said Margaret; that defendant consulted and employed lawyers to bring the suit; that Thos. D. Little was insolvent and irresponsible to the knowledge of defendant; and that plaintiff was put to large expense in the employment of counsel to defend the said suit, etc. The second count avers that defendant stated that plaintiff was caught in bed with Margaret. The third count alleges that defendant stated that plaintiff was guilty of fooling the girl and getting her in the family way. The fourth count avers that defendant stated that plaintiff was detected in the act of criminal intercourse with said Margaret. The defendant pleaded the general issue, and, also, the truth in justification.

The testimony is somewhat voluminous, and the instructions of the court numerous. The record presents no objections to the testimony, or witnesses, except a technical objection to the deposition of Thos. D. Little. The wife of defendant was examined as a witness, without objection, as far as appears by the record. The jury returned a verdict for the defendant, and the plaintiff asked for a new trial upon the ground that the verdict was contrary to the law and the evidence, and contrary to, and in violation of the instructions of the court, which motion being overruled, the plaintiff brought writ of error, and assigns here for cause of reversal of the judgment against him, the following errors:

1st. The court erred in giving the 2d, 3d, 4th, 5th and 6th instructions for defendant.

2d. The court erred in overruling plaintiff's motion for a new trial.

3d. The court erred in permitting the wife of defendant to testify as a witness in the cause for the defendant, her husband, against the objections of plaintiff.

As the record fails to show any objection to the testimony of the wife of defendant on the trial, we are unable to entertain that point here; so that the only questions for our consideration are embraced in the instructions for defendant,

objected to by the plaintiff, and such further questions as are raised by the motion for a new trial.

The second instruction for defendant, and objected to by the plaintiff, is as follows:

" In actions of slander, it is the sense and application of the words spoken as understood by the hearers, which causes the damage and constitutes the very gist of the action, and if the jury believe from the evidence that the words used by Fleming were not understood by the hearers in a malicious or slanderous sense, then they must find for Fleming."

The facts and circumstances attending the utterance of the words charged to be slanderous; the understanding of the hearers where the words are ambiguous, or where the slander is contained in a question, a fable, an enigma, or the like; and the question of malice, as derived from the words and circumstances, are all the subject of inquiry on the trial, and for the determination of the jury. In the case under consideration, the words used are in the plain and ordinary language, in common use. They are not ambiguous, nor doubtful. The slander was not uttered by means of a foreign language, nor by allegorical, hyperbolical, or other figurative sense. No interpretation is required to communicate the sense of the words used. In this case, therefore, they are to be taken in their plain and obvious sense. Under such circumstances, and upon all the facts, the jury are the judges of the meaning and intent of the words, and of the malice of defendant. The foregoing instruction constitutes an independent tribunal to determine for the jury what should have been submitted to their own judgment, after all the facts and circumstances had been presented by the testimony. The understanding of the hearers is sometimes a proper subject of inquiry, but their opinion as to the meaning and intent of the defendant, the language being unequivocal, is improper.

The question of intent is one peculiarly within the province of the jury, and the latter clause of the above instruc-

tion was in no small degree calculated to mislead them; partly, because the terms used are ambiguous to non-professional gentlemen; to some extent because the malice or slanderous sense is an inference of law and not of fact; but mainly because the "malicious or slanderous sense" of the words used, cannot be referred to, and determined by the understanding of the hearers, where, as in this case, the slander is communicated in plain and direct language; nor is the question of malice determinable, upon the opinion or understanding of the hearers, under any circumstances. 4 Scam., 30; 12 Johns. R., 249; 3 ib., 239; 3 Hawks., 474; 2 Wend., 526; 4 ib., 320; 12 Ired., 377; 1 Sneed, 458; 23 Ill., 500; 2 Gilm, 726; 9 Mo., 769.

The third instruction for defendant is as follows: "If the jury believe from the evidence in this case that Fleming did not utter the words complained of, from malice, express or implied, towards the plaintiff, but only from a moral and legal sense of duty to one under his care and protection, and for no other reason, and without any design to injure the plaintiff's reputation, or to deprive him of any part of his estate unlawfully, they should find for the defendant. Malice is a necessary ingredient in every action of slander. But in actions of this kind, malice must be understood in its legal signification, as well as in its common acceptation. Malice, in its common acceptation, means ill-will against a person. Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse."

This instruction is confused, and otherwise erroneous. Express, or actual malice need not be shown, except in cases of privileged communications. In such cases, the malice being repelled, the plaintiff must prove actual malice. In all other cases, the malice is implied, and need not be proven. Except to a jury of lawyers, this instruction could afford no guide to a correct conclusion, but rather the reverse.

Whether the defendant was acting from " a moral and legal sense of duty to one under his care and protection,"

VOL. I—46

involved questions both of law and fact. What was the moral and legal duty of defendant? Did he act from such motives? These were questions for the jury.

The testimony shows that this girl was living at defendant's, without wages; that she worked in the kitchen and milked the cows ; that in the absence of defendant and his wife from home, they usually sent Miss Little to her uncle or to their friends to stay during their absence, but that to their knowledge, she was in the habit of returning to defendant's house before the return of the latter, and of frequently visiting the negro quarters, for which they often reproved her. It appears also, that defendant referred the prosecution of Jarnigan to Thos. D. Little, and desired to send the girl from his house to the house and care of her uncle, about which they differed so earnestly, as to submit the settlement of the question to arbitration. Could defendant have felt under a sense of legal or moral duty towards one under these circumstances ? And did he act from a sense of moral or legal obligation towards the girl? We are not prepared to say that the instruction assumes the affirmative of these questions, but it would have been more satisfactory if the judge on the trial had analyzed this instruction, and presented to the jury the several questions therein, with suitable explanations of the legal terms used. 3 How. U. S., 266; 19 Barb., 111; 3 Denio, 110; 3 Sandf., 341; 23 Ill., 498; 5 Cush., 104; 1 Denio., 488; 4 Comst., 162; 12 Pick., 163 ; 10 Vt., 353.

The fourth instruction for defendant is as follows : " It is lawful for the defendant upon the trial of an action of slander, where he pleads justification to give in evidence in his defense the truth of the matter, written, spoken, or published, and if the defendant prove the charges to be true, this constitutes a sufficient excuse for the utterance of the words."

This instruction is a correct legal proposition, but if the record before us sets forth the testimony correctly, there was no pretense of proving the truth of the slanderous words. Indeed, the plea of justification was filed subsequent to the

birth of a negro child. The defendant as alleged, had reported
the plaintiff as guilty of getting the girl with child; that
they were caught on the bed together, and in the act of
criminal intercourse. There was no proof of the truth of
either of these charges. Proof that they were standing on
the floor, is not evidence that they were caught on the bed
together. Proof of actual intercourse, if the girl is to be
believed, is not proof that they were caught in the act.
Justification on the ground of truth, utterly and wholly
failed. The instruction, therefore, has no application to the
case. The plaintiff cannot be found guilty of the conduct
imputed to him upon suspicion; nor will proof of other im-
proper acts, outside the record, justify the defendant. The
evidence under the special plea, should have been rejected
or withheld from the consideration of the jury. 12 S. & M.,
328; 38 Miss., 227; 4 Ired., 461; 10 Humph., 461; 1 Smith,
287; 8 Blackf., 495; 25 Me., 315; 3 Barb., 599.

The 5th instruction for defendant is as follows: "If the
injury complained of, is in itself the institution of a judicial
proceeding for some alleged offense before a tribunal having
jurisdiction, it is not the ground of an action of slander at all,
but only of an action of malicious prosecution, or malicious
suing out a warrant in which bad motives and want of prob-
able cause must be shown."

No objection appears to have been made to the declaration,
because of its statement of the suit of Little against Jarni-
gan, nor was objection made to the evidence with reference to
it, though there was an objection upon technical grounds
to the depositions of Thos. D. Little, wherein evidence in
regard to that suit was detailed, but not to the evidence
itself. As a distinctive cause of action, the statement of
the action of Little v. Jarnigan in the declaration in this case
might be objectionable on the ground of a misjoinder of
actions, but for some purposes we think it proper. This
instruction was not only inapplicable, but in its connections,
calculated to have a fatal influence on the minds of the jury.
A malicious prosecution may be the most effective mode of

propagating a slander, and in many cases an action lies for the injury to the character.    In an action for malicious prosecution, damages may be recovered for the injury to reputation, and this will be a bar to an action of slander for the same cause.    So, undoubtedly, a recovery in an action of slander for injury to character through a malicious prosecution would be a bar to a claim for damages on the same ground in a direct action for malicious prosecution.    As we understand the first count of the declaration, it is for slanderous words spoken, the suit of Little v. Jarnigan being set out as the result or consequence of those slanderous words, and as a means of greater and more injurious publicity, or to show malice or enhance the damages.    9 N. H., 9 ; 4 N. Y., 579.

The 6th instruction for defendant is as follows :    " The defendant asks the court to charge the jury, that when a party introduces a witness on the stand he thereby endorses his credibility, and that the party who introduces the witness cannot impeach the credibility of the witness so introduced by him."

This instruction is so objectionable that were there no other grounds of error, this alone would be fatal.    It would be objectionable in any case, but in this instruction the plaintiff is made to endorse the credibibity of a witness proven to be almost, if not quite, a vagrant and a wanton.    It is sufficient that a party cannot impeach a witness introduced by himself, without being declared to the jury, under the authority of the court, to have endorsed his credibility.    The rule is clearly stated in the books, and should be strictly adhered to by *nisi prius* judges.    The enlargement, as in the case before us, would be unjust and pernicious.    In this case, in connection with the series of instructions for defendant, it must have had an important if not a controlling influence upon the verdict.

Upon the refusal of the court to grant a new trial, without commenting upon the weight of evidence, we observe that, the defense is presented by the general issue, and a special plea

of the truth in justification. Under the general issue the defendant may give in evidence any mitigating circumstances to reduce the damages. Art. 96, p. 493, Rev. Code. But he cannot prove the truth of the charges nor give evidence tending to prove their truth. The general denial puts in issue the utterance of any words; of the words charged in particular; of their import, and of the intent of their publication. As already observed, the publicity of slanderous words, unless privileged, or under circumstances repelling the presumption, is *prima facie* or presumptively malicious. In other words, malice is implied when the slanderous words are uttered under circumstances which the law holds to be without justification, palliation, or excuse.

If the mitigating circumstances appear upon the plaintiff's own showing, then he must prove malice in fact or express malice. If they do not thus appear, the defendant may prove under the plea of not guilty, any facts which repel the implication of malice, not proving or tending to prove the truth of the charges. In addition to the facts and circumstances attending the utterance of the words, he may prove, among other things, that he was acting from a sense of moral and legal duty; that he had repeated only what he had been told by another; and that the communication or publication was privileged. In regard to the sense or weight of moral and legal duty which impelled the defendant in this case, we have nothing to add to what we have already said on that subject. In the repetition of a slander the repeater must, at the time, give not only the precise words of the author, but the name of a responsible person against whom the plaintiff may have his certain cause of action. Even then the responsibility of defendant depends upon the *quo animo* with which he repeats the slander. 10 Johns. R., 447; 4 Wend., 659; 8 ib., 602; 3 Yates, 508; 3 Dana, 422; 5 Bing., 382; 2 S. & M., 559; Atkinson v. Patton, 1 Cr. C. C., 46; Hogan v. Brown, 1 Cr. C. C., 75.

Privileged communications constitute an exception to the general rules relating to libel and slander, and for the reason

that they are presumed not to be malicious. The rule is well settled that if the words were spoken or the publication made upon a just occasion, the communication is privileged, and express malice must be shown in order to maintain an action. 1 Hil., 317; 23 Ill., 498; 15 Ala., 662; 3 Johns., 475; 14 ib., 234; 11 N. Y.; 12 N. Y. When the defense, in such a case, rests on the ground of privileged communications, it must be shown that the words were spoken at such a time and under such circumstances as would negative the supposition of malice in using them, 23 Ill., 498, which can hardly be claimed according to the record of several of defendant's alleged conversations.

A privileged communication and the repetition of a slander must be upon a suitable and justifiable occasion; from good motives, and without malice. In the record before us, there is wanting in all the conversations of defendant, anything like the expression of a desire for an amicable appeal to Jarnigan as the supposed author of Miss Little's ruin, to do her voluntary justice. As to the frequent talks with Thos. D. Little, to induce him to prosecute Jarnigan, the jury are the judges of the motives and intentions of defendant. In his talk with Mr. Leatherwood, he said he was " bothered about the matter, and was in trouble," and had " come to Mr. L. as a friend," and to " get his advice." Mr. L. very sensibly, and as a friend ought to have done, asked defendant why he did not tell Jarnigan. Defendant said it would do no good, but also said he would get some men to go with him, and would go. We are left in doubt, whether defendant thus proposed a friendly or a hostile visit to plaintiff, by getting " some men " to go with him. Mr. L., however, still further exhibited his good sense by preferring to go alone to inform plaintiff of the reports about him. Although defendant repeated these slanders to several, nothing appears of a practical character, looking to a friendly adjustment of any claims Miss Little might have upon Jarnigan. Defendant also repeated these stories to Mr. M. P. Lowry, as a friend, whose advice he sought, but whether the advice was given,

or acted upon, is not disclosed.  It appears that he conversed with, and prepared the minds of counsel to take up the case of Little v. Jarnigan; but whether he was thus acting from a sense of legal or moral duty, is a question for the jury. The repetition of these charges to Judge Davis and others, is apparently without purpose, other than to repeat the stories.  No " occasion," justifiable, or otherwise, appears in the record from the conversations with Mr. Lowry, or with Judge Davis and others.  7 Ired., 448; 15 Ill., 311; 5 Blackf., 88; 10 B. & C., 263; 26 Ala., 300.

A plea of justification is based upon the theory that the defendant uttered the words charged in the declaration.  This plea must be specific to every part and particular of the declaration, as the proof must be full and complete, or the plea must fail.  Character is far more sacred than property, and should be protected by courts and juries with watchful care.  Persons who injure the character of others, ought to be no less answerable to justice than those who injure property.  The principles and philosophy of the law as to the latter, constitute the basis of the rules as to the former, and a correct understanding of the one will aid in a due administration of the other.  As a general rule, the same degree of carelessness and negligence, which will render a man responsible for injury to property, will render him no less liable for injuries to character.  Without intending to depart from our rule, not to comment upon the weight of the evidence in this case, we are compelled to express, in conclusion, our inability to discover in the record the reasons of the verdict in the face of the fact that the plea of justification was filed subsequent to the birth of the negro child.

Under proper instructions, the questions in this action are peculiarly for the jury, who, we are confident, on another trial, when fully and correctly instructed, will do exact justice between these parties.

*Vide,* 11 Johns. R., 38; 5 ib., 221; 12 Johns. R., 240; 3 ib., 180–239; 11 N. Y.; 12 N. Y.; 2 Wend., 448; 1 Min., 156; 4 Md., 454; 26 Ala., 300; 15 Vt., 245; 7 Cow., 725; 12

Wend., 546; 2 Leigh, 471; 16 N. Y., 54–442; 2 Green, 311; Owen, 51; 3 Ind., 518; 4 Iowa, 453; 13 Ala., 127; 5 Ind., 426; 29 Me.; 5 Leigh, 695; 10 Vt., 343.

Upon the points herein discussed, we refer, also, generally to Starkie on Ev.; Hilliard on Torts; Gr. Ev.; Ph. Ev., with Cow. & H's notes, wherein the law of slander is stated with clearness and precision.

The judgment is reversed and the case remanded.